UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| Ínaru Nadia de la Fuente Díaz, Maru Rosa Hernández, André Rodil, Yeivy Vélez Bartolomei, Gé Castro Cruz, Deni Juste<br>*Plaintiffs*<br><br>vs<br><br>Pedro Pierluisi, in his official capacity as Governor of the Commonwealth of Puerto Rico; Dr. Carlos R. Mellado López, in his official capacity as Secretary of the Department of Health of the Commonwealth; Wanda Llovet Díaz, in her official capacity as the Director of the Division of Demographic Registry and Vital Statistics of the Commonwealth<br>*Defendants* | Civil No.<br><br><br>COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEFS |

**COMPLAINT**

Come now the above-mentioned plaintiffs, through their undersigned counsel, and respectfully set forth and pray:

**Jurisdiction and Venue**

This Honorable Court has subject matter jurisdiction over the instant case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3), as relief is sought under 42 U.S.C. § 1983 for violation of plaintiffs' rights under the Fourteenth Amendment to the Constitution of the United States of America.  The District of Puerto Rico is the proper venue as all parties reside in said judicial district, which is also where all relevant facts took place.  28 U.S.C. § 1391(b).  Supplemental jurisdiction is hereby invoked, as allowed by 28 U.S.C. § 1367, for claims arising under the Puerto Rico Constitution.

**Introductory Statement**

1. Plaintiffs are nonbinary persons born in Puerto Rico.

2. Defendants are all officers of the Puerto Rico government who are, in the case of the Governor, the ultimate enforcer of the law, as per Article IV of the Commonwealth's Constitution and, in the case of the remaining defendants, they are in charge of running what is commonly the Demographic Registry, and officially known as the "Vital Statistics Registry", a responsibility which should be carried out, not only in compliance with the statutes and regulations pertaining said institution, but also in a manner that does not contravene plaintiffs' constitutional rights.

3. Individual plaintiffs wish to correct their respective Puerto Rico birth certificates to accurately reflect who they are, consistent with their gender identities.

4. In 2018, transgendered people obtained an Order from this Court in case 2017-1557 CCC, directing the Puerto Rico Division of Demographic Registry and Vital Statistics of the Commonwealth (hereinafter the "Demographic Registry") to change the gender that appears in their birth certificates from one gender to another (male or female). *Arroyo González v Rosselló Nevares*, 305 F. Supp.3d 327 (D.P.R. 2018). As a result, now the Registry has a published protocol by which people who so wish may change their gender marker in their birth certificate. [Instructions for Application for Gender Change in Vital Event Certification, Exhibit 1]

5. Notwithstanding, at that time the Registry did not amend their form to include all gender possibilities; instead, it kept the binary system male/female.

6. That decision was based on plaintiffs' constitutional rights to decisional privacy and informational privacy, as well as the Commonwealth of Puerto Rico's ("Commonwealth") public policy that prohibits discrimination by public agencies and instrumentalities based on gender identity [OE-2008-57 of November 14, 2008].

7. Section 1 of the Bill of Rights set forth in Article II of the Commonwealth's Constitution, provides: "The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas. Both the laws and the

system of public education shall embody these principles of essential human equality." Section 19 provides that [t]he foregoing enumeration of rights shall not be construed restrictively nor does it contemplate the exclusion of other rights not specifically mentioned which belong to the people in a democracy."

8. On July 5, 2023, plaintiffs, through Amnistía Internacional Puerto Rico, an organization dedicated to promote equity and justice for humankind, requested in writing an amendment to the Application for Gender Change in Vital Event Certification, so as to include an X option. [Letter, Exhibit 2] On September 8, Secretary Llovet answered through an informal email, denying the request indicating that, lacking a court decision or legislative action, they could not amend the form to include the X marker. [Email from Llovet, Exhibit 3]

9. In the letter to Secretary Llovet, plaintiffs informed that, starting April 11, 2022, the US State Department had recently included the X marker for their passports, as a symbol to reflect their identities as non-binary individuals.

10. To request a change of gender in the Registry, the protocol requires that a person present a passport stating the gender they wish to appear in their birth certificates without requiring any additional documentation, as instructed by Judge Cerezo's order[1]. [See Exhibit 1]

---

[1] The specific order issued by the Court is as follows:

> The Demographic Registry of the Commonwealth of Puerto Rico **SHALL ADOPT** the criteria of the Department of Transportation and Public Work's "Request to Change Transgender Persons' Gender Marker," DTOP-DIS-324 Form, as **the** application form to be submitted by transgenders and which shall be accepted as the first step towards the issuance of their new birth certificates, in compliance with the Court's mandate. *See* Attachment A to the Judgment. The transgender individual shall present the application accompanied by one of the following documents: (1) a passport that reflects a person's true gender, whether female or male, (2) a driver's license that reflects the person's true gender, whether female or male, or (3) a certification issued by a healthcare professional or mental health professional with whom the person has a doctor-patient relationship stating, based on his or her professional opinion, the true gender identity of the applicant, whether female or male, and that it is expected that this will continue to be the gender with which the applicant will identify him or herself in the future. If the applicant has not had any of the documents requested previously issued, a health care professional or mental health professional with whom the applicant has a doctor-patient relationship must certify based on his or her professional opinion that the true gender identity of the applicant is ( ) female or ( ) male and that it is expected that this will continue to be the gender with which the

11. The United States Constitution guarantees all persons equal dignity, the equal protection of the laws, fundamental rights of liberty and privacy, freedom of expression, and freedom from compelled speech. Those constitutional guarantees protect personal decisions central to individual dignity and personal autonomy, including intimate decisions that define personal identity, such as a person's gender identity. Puerto Rico's refusal to provide accurate birth certificates to transgender people that are consistent with their gender identity violates these federal constitutional guarantees.

12. There is no compelling, important, or even legitimate governmental justification to support Puerto Rico's refusal to provide nonbinary people with accurate birth certificates matching their gender identity nor is there any remotely cognizable injury or substantial burden attributable to having the official document reflect the reality of who these citizens are.

13. Moreover, it is arbitrary to allow the identification of transgender people while denying the identification of nonbinary people.

**PLAINTIFFS**

13. Ínaru Nadia de la Fuente Díaz is a nonbinary person living in San Juan. They is studying Law at the UPR and is an activist through La Sombrilla Cuir. They have a US passport that identifies they with an X marker as their gender. [Exhibit 4]

14. Maru Rosa Hernández is a nonbinary person living in San Juan. They is currently employed. [Exhibit 5]

15. André Rodil is a nonbinary person living in San Juan, who works and study part time. [Exhibit 6]

16. Yelvy Vélez Bartolomei is an nonbinary person living in San Juan. They is currently employed. [Exhibit 7]

---

applicant will identify him or herself in the future. *See* Part B of DTOP-DIS-32 Form, which is included as Attachment A to the Judgment.

*Arroyo González*, 305 F. Supp.3d at 334 (emphasis in the original)

17. Gé Castro Cruz is a nonbinary person living in San Juan. They is currently employed. [Exhibit 8]

18. Deni Juste is a nonbinary person living in Moca. They is currently employed. [Exhibit 9]

### DEFENDANTS

17. Defendant Gov. Pedro Pierluisi Urrutia (Gov. Pierluisi) is sued in his official capacity as Governor of the Commonwealth of Puerto Rico.  In his capacity as governor, Gov. Pierluisi executes the laws of the Commonwealth, including the Vital Statistics Registry Act of Puerto Rico (hereinafter the "Vital Statistics Registry Act"), and supervises the official conduct of all executive and ministerial officers who implement and enforce the Vital Statistics Registry Act.  Gov. Pierluisi has knowingly encouraged, condoned, and acquiesced in the acts barring Plaintiffs from living consistently with their gender identity, including correcting the gender marker on their birth certificates. Gov. Pierluisi is a person within the meaning of 42 U.S.C. § 1983 and has acted under color of state or territorial law at all times relevant to this Complaint.

18. Defendant Dr. Carlos R. Mellado López ("Secretary Mellado") is sued in his official capacity as Secretary of the Department of Health of the Commonwealth of Puerto Rico.  Pursuant to 24 P.R. Laws Ann. § 1231, Secretary Mellado's duties include, among others, "prepar[ing], caus[ing] to be printed, and furnish[ing] to the keepers of the Registers, all books, printed matter and forms to be used for the registration of births [...] occurring or taking place in the Commonwealth of Puerto Rico." Further, pursuant to 24 P.R. Laws Ann. § 1231, Secretary Mellado "prepare[s] and distribute[s] such detailed instruction . . . as may be necessary for the uniform application [of the Vital Statistics Registry Act]." Secretary Mellado also supervises and manages the Commonwealth's Director of the Division of Demographic Registry and Vital Statistics, Defendant Wanda Llovet Díaz.  Secretary Mellado ensures compliance in all of these functions with the relevant Commonwealth laws, including those that bar transgender persons born in Puerto Rico from correcting the gender markers on their

birth certificates.  Secretary Mellado is a person within the meaning of 42 U.S.C. § 1983 and has acted under color of state or territorial law at all times relevant to this Complaint.

19. Defendant Wanda Llovet Díaz ("Ms. Llovet") is sued in her official capacity as the Director of the Division of Demographic Registry and Vital Statistics of the Commonwealth (hereinafter the "Demographic Registry").  In her official capacity, pursuant to 24 P.R. Laws Ann. § 1071, Ms. Llovet is "in charge of all matters connected with the registration of births, marriages and deaths which may occur or take place in Puerto Rico."  Ms. Llovet also ensures compliance in all of these functions with the relevant Commonwealth laws, including those that bar transgender persons born in Puerto Rico from correcting the gender markers on their birth certificates.  Ms. Llovet is a person within the meaning of 42 U.S.C. § 1983 and has acted under color of state or territorial law at all times relevant to this Complaint.

## STATEMENT OF FACTS

20. Moments after a child is born, the general practice in this country is for a physician to assess visually the newborn's genitalia and assign the newborn's sex as "male" or "female" on that basis. Sex, however, is much more complex.

21. "Humans are socially conditioned to view sex and gender as binary attributes. From the moment we are born—or even before—we are definitively labeled 'boy 'or 'girl'"[2].

22. Individuals whose gender identity falls within these traditionally recognized confines of "male" and "female" are "binary." Both cisgender people (those whose gender identity matches the sex they were assigned at birth) and transgender people (those whose gender identity does not match the sex assigned at birth) can have a binary gender of male or female.

---

[2] Amanda Montañez, *Beyond XX and XY: The Extraordinary Complexity of Sex Determination*, SCI. AM., Sept. 2017, 50–51, *available at* https://www.scientificamerican.com/article/beyond-xx-and-xy-the-extraordinary-complexity-of-sex-determination/.

23. But hundreds of thousands of Americans have a gender identity that is neither male nor female.[3] " [S]cience points to a much more ambiguous reality … The more we learn about sex and gender, the more these attributes appear to exist on a spectrum."[4]

24. The terms "nonbinary" and "gender-neutral" recognize this reality. Indeed:

> Determination of biological sex is staggeringly complex, involving not only anatomy but an intricate choreography of genetic and chemical factors that unfolds over time. Intersex individuals—those for whom sexual development follows an atypical trajectory—are characterized by a diverse range of conditions … [T]he gender with which a person identifies does not always align with the sex they are assigned at birth, and they may not be wholly male or female.[5]

25. Transgender people are people who have a gender identity (the innate knowledge of own gender that all people have) that is different from the gender they were assigned at birth. Many transgender people are men or women that is, their gender identity is male or female. Many other transgender people are nonbinary that is, their gender identity is neither male nor female. For people who are not male or female, the appropriate gender marker is a gender-neural designation, typically an "X".

26. Nonbinary individuals may or may not use the singular form of "they/them/their" or other gender-neutral pronouns. They may describe themselves using the term "nonbinary"; use more specific gender-neutral terms such as "agender," "genderqueer," "gender fluid," "Two Spirit," "bigender," "pangender," "gender nonconforming," or "gender variant"; or not identify with any gender at all.[6]

---

[3] Andrew R. Flores et al., Williams Institute (UCLA), "How Many Adults Identify as Transgender in the United States" (2016), https://williamsinstitute.law.ucla.edu/wp-content/uploads/How-Many-Adults-Identify-as-Transgender-in-the-United-States.pdf, at 3 (1.4 million, or 0.6%, of U.S. adults identify as transgender); Sandy E. James et al., NAT'L CTR FOR TRANSGENDER EQUALITY, THE REPORT OF THE 2015 U.S. TRANSGENDER SURVEY (2016), https://transequality.org/sites/default/files/docs/usts/USTS-Full-Report-Dec17.pdf, at 45 & Fig. 4.2 (hereinafter TRANSGENDER SURVEY) (35% of adult transgender population identifies as nonbinary). Currently, the NAT'L CTR FOR TRANSGENDER EQUALITY is gathering data for their 2022 survey.
[4] Montañez, supra n.2.
[5] Id. (footnote omitted).
[6] TRANSGENDER SURVEY, supra n.3, at 44 & Fig. 4.1.

27. "Intersex" means having been born with variations in sex characteristics that do not fit typical definitions for male or female bodies. Of the more than 490,000[7], adults in the U.S. with nonbinary gender identities, most were not born intersex.[8]

28. In fact, at this moment the Demographic Registry does not have a marker to properly identify intersex-born babies, denying both the newborn and their families a viable option to register these births.[9]

29. Gender identity—a person's core internal sense of their own gender—is the primary factor in determining a person's sex. Every person has a gender identity. There is a medical consensus that gender identity is innate and that efforts to change a person's gender identity are unethical and harmful to a person's health and well-being.

30. The incongruence between a transgender person's gender identity and sex assigned at birth can sometimes be associated with gender dysphoria.  Gender dysphoria is a serious medical condition recognized in the *American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders*, Fifth Ed. (2013) ("DSM-V"), and by the other leading medical and mental health professional groups, including the American Medical Association and the American Psychological Association.

31. Gender dysphoria refers to clinically significant distress that can result when a person's gender identity differs from the person's sex assigned at birth.  If left

---

[7] *See id.* at 45 & Fig. 4.2 (35% of adult transgender population identifies as nonbinary); Flores, *supra* n.3, at 3 (1.4 million transgender adults in U.S.).

[8] TRANSGENDER SURVEY, supra n.3, at 44 & Fig. 4.1. See also Intersex Soc'y of
N. Am., "How Common Is Intersex?", http://www.isna.org/faq/frequency (citing studies: "[A]bout 1 in 1500 to 1 in 2000" children are "born [with] noticeably atypical in terms of genitalia," "[b]ut a lot more people than that are born with subtler forms of sex anatomy variations, some of which won't show up until later in life.").

[9] Courts that have addressed requests of relief from intersex plaintiffs have pointed that "Sexual development in cases of intersex persons makes the gender classification at birth inconclusive. It is at maturity that the gender of such persons, like respondent, is fixed. [...] To him belongs the human right to the pursuit of happiness and of health. Thus, to him should belong the primordial choice of what courses of action to take along the path of his sexual development and maturation https://www.icj.org/wp-content/uploads/2012/07/Republic-of-the-Philippines-v.-Jennifer-Cagandahan-Supreme-Court-of-the-Philippines-Second-Division.pdf

untreated, gender dysphoria may result in psychological distress, anxiety, depression, and suicidal ideation or even self-harm.

32. The gender change policy maintained by the US State Department for the last decade reflects an understanding that the Department should identify people not according to preconceived notions about gender but according to their actual gender, that is, the gender that individuals know themselves to be, receive appropriate treatment related to, and are generally known as. This understanding mirrors the medical consensus that when a person's sex-related traits do not all align with their gender identity, the person should be treated in accordance with their gender identity. Beyond reflecting a medical consensus and addressing an important community need, policies that acknowledge people's actual gender  best serve government interests in accurately identifying individuals.

33. All the reasons for adopting this policy for transgender women and men also apply to nonbinary people. A consensus among leading medical organizations and experts in transgender health acknowledges that people have a range of gender identities, with male and female only two of many possibilities. See e.g. American Psychological Association, *Guidelines for Psychological Practice with Transgender and Gender Nonconforming People* 834 (2015)  ("Gender identity is defined as a person's deeply felt, inherent sense of being a girl, woman, or female; a boy, a man, or male; a blend of male or female; or an alternative gender"); *DSM-V* at 451 ("Gender identity...refers to an individual's identification as male, female or, occasionally, some other category other than male or female").

34. Like for anyone else whose sex-related traits do not all align with their gender identity, the medical consensus is that nonbinary people should be treated in accordance with their gender identity. See Brief of Amici Curiae Am. Acad. Of Pediatrics, Am. Psychiatric Assoc., Am. College of Physicians, and 17 Additional Medical and Mental Health Organizations in Support of Respondent, *Gloucester Cty. School Bd. v. G.G.*, 2017 WL 1057281 The international medical consensus regarding treatment for gender dysphoria is to assist the patient to live in accordance with his or her gender identity, thus alleviating the distress. Research has demonstrated that failing to treat transgender people, including nonbinary people, according to their gender identity

can cause significant harms; meanwhile, when transgender people are able to live according to their gender identity, their health, safety, and wellbeing is substantially improved. See American Medical Association, LGBTQ Change Efforts Issue Brief (2019), https://www.ama-assn.org/system/files/2019-03/transgender-conversion-issue-brief.pdf. In fact, one study found a drastic reduction in suicide attempts for transgender people, including nonbinary transgender people, who had even just one identity document that accurately reflected their gender identity. Greta R. Bauer, et al. "Intervenable factors associated with suicide risk in transgender persons: a respondent driven sampling study in Ontario, Canada" 15.1 *BMC Pub. Health* 525 (2015).

35. The government's interest in accurately identifying people also supports recognizing people by the gender they know themselves to be and generally express to others. For many nonbinary people, everyone in their personal and professional lives know them as nonbinary. It is for these reasons that twenty one states and the District of Columbia now acknowledge nonbinary genders on driver's licenses[10].

---

[10]**ARKANSAS** Driver Services Instructions, https://transequality.org/sites/default/files/docs/id/AR%20Drivers%20License%20gender%20change%20guidance.pdf; **CALIFORNIA** Gender Recognition Act, SB 179, https://leginfo.legislature.ca.gov/faces/billCompareClient.xhtml?bill_id=201720180SB179; See **COLORADO** Department of Revenue, Change your Sex, https://www.colorado.gov/pacific/dmv/change-your-sex; **INDIANA**, See NBC News, Hoosier ally? Pence's home state quietly begins issuing nonbinary IDs (Mar. 12, 2019), https://www.nbcnews.com/feature/nbc-out/hoosier-ally-pence-s-home-state-quietly-begins-issuing-nonbinary-n982106; See **MAINE** Gender Marker Form, https://www1.maine.gov/sos/bmv/forms/GENDER%20DESIGNATION%20FORM.pdf; See **NEVADA** Department of Motor Vehicles, Name Changes, http://www.dmvnv.com/namechange.htm; **MARYLAND**, See SB 196, 2019 Gen. Assemb., Reg. Sess. (Md. 2019) http://mgaleg.maryland.gov/2019RS/bills/sb/sb0196T.pdf; See MN Driver and Vehicle Services Self-Designated Descriptors, **MINNESOTA**, https://dps.mn.gov/divisions/dvs/Pages/self-designated-descriptors.aspx; **OREGON** Driver & Motor Vehicle Services Instructions, https://www.oregon.gov/ODOT/DMV/Pages/driverid/chg_gender_designation.aspx; **VERMONT** DMV Press Release (Mar. 13, 2019), https://dmv.vermont.gov/press-release/new-license-id-will-allow-third-gender-option-starting-this-summer; **DC** Gender Self-Designation Form, https://dmv.dc.gov/sites/default/files/dc/sites/dmv/publication/attachments/DC%20DMV%20Form%20Gender%20S elf-Designation%20English.pdf; **CONNECTICUT**, See Ned, Lamont (January 27, 2020). "Connecticut Governor Lamont Announces DMV Now Including 'Non-Binary' as Gender Option for Driver's Licenses and ID Cards". *Office of the Governor*. Retrieved 4 January 2020; **HAWAII**, See Herreria, Carla (2019-06-27). "Hawaii Adds Third Gender Option For State-Issued IDs". *HuffPost;* **NEW JERSEY**, See Romine, Taylor (April 20, 2021). "New Jersey Adds 'X' Gender Marker on Driver's Licenses and Other State Identification". *CNN*. Retrieved May 16, 2021; **NEW MEXICO**, See https://static1.squarespace.com/static/61b8c0da4a7ea57834ca0af6/t/61e9da0c6191791b2480af81/1642715677520/Name&GenderChangeNMEng.pdf.

36.  Seventeen states and New York City now acknowledge nonbinary genders on birth certificates[11]; and several municipalities[12] and at least sixteen countries[13] do the same. See https://thehill.com/changing-america/respect/diversity-inclusion/3507206-here-are-the-states-where-you-can-and-cannot-change-your-gender-designation-on-official-documents/

37. After this Court's decision in 2018, the Demographic Registry's policy allows change of gender only for transgendered binary people, but denies it to transgendered nonbinary people. This arbitrary decision in violation to the rights guaranteed by the US and the Commonwealth's Constitutions has caused and will continue to cause distress to plaintiffs and will further discriminatory treatment against them. This unlawful act can and must be stopped by this Court.

---

[11]California Gender Recognition Act, SB 179; https://leginfo.legislature.ca.gov/faces/billCompareClient.xhtml?bill_id=201720180SB179; CT Dept. of Public Health Testimony on Senate Bill 388, (Feb. 25, 2019), https://www.cga.ct.gov/2019/PHdata/Tmy/2019SB-00388-R000225-Department%20of%20Public%20Health-TMY.PDF; Nev. Admin. Code § 440.030, https://www.leg.state.nv.us/Register/RegsReviewed/$R066-16A.pdf; New Jersey Babs Siperstein Law, https://www.njleg.state.nj.us/2018/Bills/A2000/1718_R2.PDF; See SB 20, 2019 Leg., 54th Sess. (N.M. 2019), signed March 2019, https://legiscan.com/NM/text/SB20/id/1978653; Oregon Health Authority House Bill 2673 Information Sheet, https://www.oregon.gov/oha/PH/BIRTHDEATHCERTIFICATES/CHANGEVITALRECORDS/Documents/OHA-2673.pdf; Washington Wash. Admin. Code § 246-490-075 , http://app.leg.wa.gov/WAC/default.aspx?cite=246-490-075; NBC News, Utah among growing number of states issuing gender-neutral IDs, (Mar. 18, 2019), https://www.nbcnews.com/feature/nbc-out/utah-among-growing-number-states-issuing-gender-neutral-ids-n984326; New York City Health Code Article 207, https://www1.nyc.gov/assets/doh/downloads/pdf/notice/2018/noa-amend-article207-section207-05.pdf.
[12]These municipalities include major cities like **CHICAGO**, Elaine Chen, Who Will Benefit From the Chicago Municipal ID?, (Nov. 28, 2017), https://southsideweekly.com/will-benefit-chicago-municipal-id/, **NEW YORK CITY,** , Matthew Rodriguez, New York City Now Has a Third Gender Option on Its ID Cards, (Jan. 15, 2019), https://www.out.com/news-opinion/2019/1/15/new-york-city-offers-third-gender-option-city-issued-idnyc-cards; and **PHILADELPHIA**, A.D. Amorosi, Gender-free municipal ID cards are close to becoming reality in Philly, (Feb. 28, 2019), http://www.epgn.com/news/14312-gender-free-municipal-id-cards-are-close-to-becoming-reality-in-philly.
[13]Countries include Nepal, India, Malta, Denmark, Bangladesh, Australia, New Zealand, Argentina, Austria, Canada, Colombia, Germany, Iceland, Ireland, the Netherlands, Pakistan and Brazil. See https://www.newsweek.com/which-countries-recognize-third-gender-option-passports-1643167.  Aaron Macarow, These Eleven Countries are Way Ahead of the US on Trans Issues, (Feb. 9, 2015), https://archive.attn.com/stories/868/transgender-passport-status; Argentina, Westfall, Sammy (22 July 2021). "Argentina rolls out gender-neutral ID", The Washington Post, Brazil, "Justiça da BA publica provimento permitindo a inclusão de gênero "não binário" no Registro Civil". *Arpen Brasil - Saiba Mais* (in Brazilian Portuguese). 2022-05-11; and

**CAUSES OF ACTION**

COUNT I – DEPRIVATION OF EQUAL PROTECTION
IN VIOLATION OF THE FOURTEENTH AMENDMENT
OF THE UNITED STATES CONSTITUTION
42 U.S.C. § 1983

38. The Fourteenth Amendment to the United States Constitution, enforceable pursuant 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. Puerto Rico is subject to the equal protection guarantee. Simply put, "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike". *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

39. All individuals born in Puerto Rico are equally situated in the sense that the state mandates that a record be created reflecting the basic facts about their lives but plaintiffs belong to a protected group whose actual gender identity is not accurately memorialized in the official record.

40. Under the Equal Protection Clause of the Fourteenth Amendment, discrimination based on sex—including gender, gender identity, transgender status and nonconformity with sex-based or gender-based stereotypes—as well as discrimination based on transgender status, is presumptively unconstitutional and subject to heightened scrutiny.

41. Puerto Rico's Birth Certificate Policy facially and intentionally discriminates against the Individual Plaintiffs and other transgender persons based on sex-related considerations. The sex that the government lists on a person's birth certificate is a government classification of a person's sex. In the case of transgender individuals, like the Individual however, this classification reflects a sex contrary to their true sex, as determined by their gender identity, causing harm as a result.

42. Puerto Rico's Birth Certificate Policy treats nonbinary persons differently than cisgender and other transgender persons who are similarly situated.

43. Under Puerto Rico's Birth Certificate Policy, cisgender persons and transgender binary persons can have birth certificates that accurately reflect their sex and that are consistent with their gender identity, but nonbinary persons are deprived of birth certificates that accurately reflect their sex and that are consistent with their gender identity.

44. Because Puerto Rico's Birth Certificate Policy deprives transgender persons born in Puerto Rico of their right to equal dignity, liberty, and autonomy by stigmatizing them and branding them as second-class citizens, it denies transgender persons born in Puerto Rico of the equal protection of the laws, in violation of the Equal Protection Clause of the Fourteenth Amendment.

45. Moreover, the officers' actions of denying to include the marker X in the birth certificate runs afoul to the instructions given to citizens, where they state that with a US passport the Registry will change the registered sex. If Plaintiff Ínaru Nadia de la Fuente Díaz presents his US Passport with the form to change his registered sex, the Registry would be unable to comply, thus, creating a gap between the reality presented in the passport and the reality presented in the Registry.

46. Accordingly, Defendants are liable for their violation of the Fourteenth Amendment rights of the Individual Plaintiffs under 42 U.S.C. § 1983, and Plaintiffs are entitled to declaratory and injunctive relief against Defendants declaring Puerto Rico's Birth Certificate Policy unconstitutional and enjoining its enforcement.

47. <u>Discrimination Based On Sex</u>. Defendant's Policy discriminates against Plaintiff on the basis of sex, both facially and as applied, by barring Plaintiff from obtaining an accurate U.S. passport with a gender marker other than "M" (male) or "F" (female). For example, if Plaintiff were male, Defendants would have issued Plaintiff a passport.

48. Discrimination against an individual who is neither male nor female as such, just like discrimination against a woman as such, is discrimination based on sex. In denying a change in the Registry, P.R. officials relied upon sex-based considerations. Because of the Demographic Registry's rigid sex-based classification, Plaintiffs, a person who is neither male nor female, is precluded from obtaining birth certificate with a marker

that properly indicates Plaintiff's sex. If Plaintiff were intersex and also identified as either male or female, Plaintiff would qualify for and be issued a a corrected document.

49. Defendants' Policy is also impermissibly premised on assumptions, expectations, stereotypes, or norms about the nature of sex as a binary characteristic, either male or female.

50. The Demographic Registry nonbinary people from changing their registered sex because they fail to conform to the sex-based stereotype that individuals are all clearly male or female. That is, the Registry relies on an inaccurate assumption that sex is binary and that individuals cannot fall along (or outside of) a sex continuum, i.e., the false belief that all people are either exclusively men/male or exclusively women/female.

51. All sex-based classifications must be supported by an exceedingly persuasive justification and be substantially related to the achievement of that underlying objective.

52. The exclusion of individuals who are neither male nor female unless they falsely describe themselves as exclusively male or female, cannot survive the heightened scrutiny required for sex-based classifications. Indeed, the Policy is not even tailored to further any legitimate interest at all.

53. Discrimination Based On Status As Neither Male Nor Female. On its face, Defendants' Policy denies an accurate birth certificate to the class of United States citizens whose sex is neither male nor female. Thus, in addition to being discrimination based on sex, Defendants' Policy also targets people who do not fit in a male or female sex classification as a group.

54. The United States Supreme Court has not yet determined the level of scrutiny applicable for laws that classify persons for adverse treatment based on their status as people who cannot identify as male or female or their status as intersex. At the very least, such classifications must be rationally related to a legitimate government interest. Here, Defendants' Policy lacks even a rational relationship to a legitimate interest.

55. <u>Discrimination Based on Transgender Status Warrants Heightened Scrutiny</u>. Transgender persons have suffered a long history of extreme discrimination in Puerto Rico and across the country, and continue to suffer such discrimination at present.

56. Transgender persons are a discrete and insular group and lack the political power to protect their rights through the legislative process. Transgender persons have largely been unable to secure explicit local, state, and federal protections to safeguard them against, and provide remedies for, discrimination.

57. A person's transgender status bears no relation to a person's ability to contribute to society.

58. Gender identity is a core, defining trait and is so fundamental to one's identity and conscience that a person cannot be required to abandon it as a condition of equal treatment.

59. Gender identity generally is fixed at an early age and is highly resistant to change through intervention.

60. For the foregoing reasons, discrimination based on gender identity and transgender status is entitled to heightened scrutiny under the equal protection clause of the Fourteenth Amendment, and Plaintiffs are entitled to relief against Defendants on that basis as well.

COUNT II – DEPRIVATION OF DUE PROCESS

IN VIOLATION OF THE FOURTEENTH AMENDMENT

OF THE UNITED STATES CONSTITUTION

42 U.S.C. § 1983

61. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1.  Puerto Rico is subject to the Due Process Clause.

62. The Due Process Clause of the Fourteenth Amendment places limitations on state action that deprives individuals of life, liberty, or property.

63. The substantive protections of the Due Process Clause[14], as well as other constitutional provisions, give rise to a right to privacy, protecting the integrity of information that is highly personal and intimate, which includes information that could lead to bodily harm upon disclosure.

64. The substantive protections of the Due Process Clause also protect the right of every person to the possession and control of their own person, and to define and express their identity. These protections extend to personal decisions central to individual dignity and personal autonomy, including intimate decisions that define personal identity as a person's sex.

65. The fundamental protections of an individual's autonomy forbid the state from interfering with the right of a transgender person to self-determination with regard to his or her gender identity and to live in accordance with that identity.  Such a decision is among the most intimate imaginable, relating to matters that all people are uniquely positioned to understand and define for themselves.

66. The government's refusal to recognize a person's sex not only denies a transgender person equal dignity and respect by undermining, indeed denying, their very identity and existence, but it also authorizes and invites other public and private entities to similarly discriminate and deny recognition.

67. By enforcing Puerto Rico's Birth Certificate Policy, Defendants unduly burden and unconstitutionally interfere with the fundamental right to autonomy in one's person and identity that all transgender persons born in Puerto Rico have.

68. There is no compelling, or even important or legitimate interest in the government to interfere with the rights of transgender persons to self-definition and autonomy in

---

[14] The difference between procedural and substantive due process rights is best explained as follows:

> As distinguished from its procedural cousin, then, substantive due process inquiry focuses on "what" the government has done, as opposed to "how and when" the government did it. And although the yardstick against which substantive due process violations are measured has been characterized in various ways, we are satisfied that, before a constitutional infringement occurs, state action must *in and of itself* be egregiously unacceptable, outrageous, or conscience-shocking.

*Amsden v. Moran*, 904 F.2d 748, 754 (1st Cir. 1990) (emphasis added)

one's person and identity.  This being the case, we are before a deprivation of liberty that clearly meets the "shocks the conscience" threshold that has been applied to substantive due process claims.

69. Accordingly, Defendants are liable for their violation of Plaintiffs' Fourteenth Amendment rights under 42 U.S.C. § 1983, and Plaintiffs are entitled to declaratory and injunctive relief against Defendants declaring Puerto Rico's Birth Certificate Policy unconstitutional and enjoining its enforcement.

COUNT III – ABRIDGEMENT OF FREE SPEECH
IN VIOLATION OF THE FIRST AMENDMENT
OF THE UNITED STATES CONSTITUTION
42 U.S.C. § 1983

70. The First Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983 and applicable to the states through the Fourteenth Amendment, provides that a state "shall make no law . . . abridging the freedom of speech."  Puerto Rico is subject to the First Amendment.

71. The freedom of speech protected by the First Amendment is multifaceted.  The First Amendment prevents the government from prohibiting speech, as well as from telling individuals what they must say.  Compelled statements are equally proscribed by the First Amendment.  A claim of compelled speech requires speech to which the speaker objects that is compelled by some governmental action.

72. By forcing transgender persons to identify themselves through their birth certificate with a sex that was incorrectly assigned to them at birth, Puerto Rico's Birth Certificate Policy violates the First Amendment by compelling nonbinary individuals to identify with a sex and identity inconsistent with who they are.  The Birth Certificate Policy also prevents nonbinary persons from accurately expressing their identity.  There is no clearer example of unconstitutional forced speech than that which forces an individual to self-identify as male or female where their sexuality does not conform to that norm.

73. Similarly, by forcing transgender people to disclose through their birth certificate private, sensitive, and personal information about their transgender status, gender

identity, or medical condition, Puerto Rico' Birth Certificate Policy violates the First Amendment by compelling transgender persons to disclose private, sensitive, and personal information that they may not want to be publicly known or that may expose them to an invasion of privacy, prejudice, discrimination, harassment, distress, humiliation, and violence.

74. There is no compelling, important, or even legitimate interest in the government compelling transgender persons to identify with a sex and identity that was incorrectly assigned to them at birth, nor is there a compelling, important, or even legitimate interest in the government forcing transgender persons to involuntarily disclose to third parties a conflict in their official documents whenever they present third parties with their inaccurate birth certificates.

75. Accordingly, Defendants are liable for their violation of the First Amendment rights of the Individual Plaintiffs and of the transgender members of Puerto Rico Para Tod@s under 42 U.S.C. § 1983, and Plaintiffs are entitled to declaratory and injunctive relief against Defendants declaring Puerto Rico's Birth Certificate Policy unconstitutional and enjoining its enforcement.

COUNT IV:
WRIT OF MANDAMUS

76. Plaintiffs hereby incorporate by reference and reallege paragraphs 1-36 of this Complaint as though fully set forth herein.

77. Plaintiff's claims—as set forth above— are clear and certain.

78. Pursuant to 22 U.S.C. § 211a, the Defendants Mellado has the power to grant and issue birth certificates, and to cause these documents to be granted by those acting under him.

79. Defendants' duty to adjudicate Plaintiff's birth certificate and issue Plaintiff a birth certificate is nondiscretionary, ministerial, and free from doubt.

80. Plaintiff has exhausted any administrative remedies that may exist, and no other adequate remedy is available to Plaintiffs.

81. Pursuant to 28 U.S.C. § 1361, Plaintiff is entitled to mandamus relief compelling Defendants to process Plaintiffs' application for a birth certificate that accurately reflects Plaintiffs' nonbinary gender.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter Judgment in their favor and against Defendants on all claims as follows:

a. Enter a declaratory judgment that the actions of Defendants complained of herein, including the enforcement of Puerto Rico's Birth Certificate Policy, are in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and the Free Speech Clause of the First Amendment to the United States Constitution; as well as the Constitution of the Commonwealth of Puerto Rico.

b. Enter a preliminary injunction and permanently enjoin Defendants, their agents, employees, representatives, and successors, and any other person acting directly or indirectly in concert with them, from enforcing Puerto Rico's Birth Certificate Policy, including from refusing to provide birth certificates to transgender nonbinary persons that accurately reflect their sex, consistent with their gender identity;

c. Permanently restrain or enjoin Defendants from relying upon its male-or-female, binary-only gender marker policy;

b. Order Defendants, their agents, employees, representatives, and successors, and any other person acting directly or indirectly in concert with them, to permit transgender nonbinary persons born in Puerto Rico to correct their birth certificates to accurately reflect their true sex, consistent with their gender identity, in accordance with the practice delineated in 24 P.R. Laws Ann. § 1136;

c. Order Defendants to immediately issue corrected birth certificates to Plaintiffs Daniela Arroyo González, Victoria Rodríguez-Roldán, and J.G. accurately reflecting their true sex, consistent with their gender identity, in accordance with the practice delineated in 24 P.R. Laws Ann. § 1136, and without adhering to the practice delineated in 24 P.R. Laws Ann. § 1231 of using a strike-out line to change one's name,

or otherwise including any information that would disclose a person's transgender status on the face of the birth certificate;

d.  Issue a writ of mandamus compelling Defendants to process Plaintiff's Application for Gender Change in Vital Event Certification on an individualized, nondiscriminatory basis;

e.  Award Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees; and

f.  Grant such other and further relief in favor of Plaintiffs as this Court deems just, equitable and proper.


Submitted, in the city of San Juan, Puerto Rico, this 27th  October, 2023.

## CERTIFICATE OF SERVICE

It is hereby certified that true and exact copy of the foregoing will be served on the defendant along with the service papers.

S/ *Johanna M. Emmanuelli Huertas*
JOHANNA M. EMMANUELLI HUERTAS
USDC-PR #210506 Email:  jmeh@poalaw.com
94 Calle Ponce, San Juan, PR  00917
Tel.:  (787)342-6499