IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Ínaru Nadia de la Fuente Díaz, Maru Rosa Hernández, André Rodil, Yeivy Vélez Bartolomei, Gé Castro Cruz, Deni Juste<br>*Plaintiffs*<br><br>vs<br><br>Pedro Pierluisi, in his official capacity as Governor of the Commonwealth of Puerto Rico; Dr. Carlos R. Mellado López, in his official capacity as Secretary of the Department of Health of the Commonwealth; Wanda Llovet Díaz, in her official capacity as the Director of the Division of Demographic Registry and Vital Statistics of the Commonwealth<br>*Defendants* | Civil No.    23-1544<br><br>COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEFS |

**MOTION TO REQUEST THE ENTRY OF A PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT THEREOF**

**TO THE HONORABLE COURT:**

**COME NOW** plaintiffs, through the undersigned attorneys and very respectfully **SETS FORTH** and **PRAYS**:

## I.     INTRODUCTION

On this same date plaintiffs have filed a complaint challenging the constitutionality of the Vital Statistics Registry' policy of denying nonbinary individuals a specific marker to identify their identity.

## II.    DISCUSSION

**A) APPLICABLE LEGAL STANDARD**

The appearing parties seek to redress a Fourteenth and First Amendment violation pursuant to 42 U.S.C. § 1983.  It is hornbook law that "Section 1983 **provides for injunctive relief** and the recovery of damages against individuals and governmental entities that deprive a plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States". *Santos Serrano v. Laboy Alvarado*, 169 F. Supp.2d 14, 16 (D.P.R. 2001) (emphasis added).  Of course, where -as here- the public officer would otherwise enjoy immunity under the Eleventh Amendment, only prospective injunctive relief may be issued. *Edelman v. Jordan*, 415 U.S. 651, 677 (1974) ("Though a § 1983 action may be instituted by public aid recipients such as respondent, a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief").

A plaintiff may not obtain a preliminary injunction unless it is established by a preponderance of the evidence that "(i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest". *Corporate Technologies, Inc. v. Harnett*, 731 F.3d 6, 9 (1st Cir. 2013).  Needless to say, we are cognizant that a preliminary injunction hearing is required by Rule 65 of the Federal Rules of Civil Procedure.  Having said this, **to the extent that we expect defendant to stipulate to the content of their own official documents, it may be that the matter is susceptible to adjudication on the papers**.  This, of course, is the Court's call to make.

We now discuss each of the aforementioned elements to show how they are met in this case.

B) **LIKELIHOOD OF SUCCESS**

It bears noting that, of all of the preliminary injunction factors "[l]ikelihood of success is the main bearing wall of the four-factor framework". *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996); see also *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) ("The *sine qua non* of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity"). We now discuss the reasons why there is a strong likelihood that this Honorable Court will side with the plaintiffs on the merits of their claims.

The United States Constitution as well as the Commonwealth's guarantees all persons equal dignity, the equal protection of the laws, fundamental rights of liberty and privacy, freedom of expression, and freedom from compelled speech. Those constitutional guarantees protect personal decisions central to individual dignity and personal autonomy, including intimate decisions that define personal identity, such as a person's gender identity. When describing the importance of the right to freedom of speech that is secured by the First Amendment, Justice Cardozo observed that said right "is the matrix, the indispensable condition, of nearly every other form of freedom". *Palko v. Connecticut*, 302 U.S. 319, 327 (1937). Regarding the right to privacy, the Supreme Court recognizes that "a constitutional right to privacy is now well established." *Daury v. Smith*, 842 F.2d 9, 13 (1st Cir. 1988). See also *Fournier v. Reardon*, 160 F.3d 754, 758 (1st Cir. 1998) (stating that the constitutional right to privacy is deemed fundamental). protecting

3

the integrity of information that is highly personal and intimate, which includes information that could lead to bodily harm and discriminatory actions.

The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property, without due process of law." *U.S. Const. Amend. XIV*, § 1. Puerto Rico is subject to the Due Process Clause. The Due Process Clause of the Fourteenth Amendment places limitations on state action that deprives individuals of life, liberty, or property. The substantive protections of the Due Process Clause also protect the right of every person to the possession and control of their own person, and to define and express their identity. These protections extend to personal decisions central to individual dignity and personal autonomy, including intimate decisions that define personal identity as a person's gender.

The fundamental protections of an individual's autonomy forbid the state from interfering with the right of a transgender person to self-determination with regard to his or her gender identity and to live in accordance with that identity. Such a decision is among the most intimate imaginable, relating to matters that all people are uniquely positioned to understand and define for themselves. The government's refusal to recognize a person's gender identity not only denies a transgender person equal dignity and respect by undermining, indeed denying, their very identity and existence, but it also authorizes and invites other public and private entities to similarly discriminate and deny recognition.

In 2018, transgendered people obtained an Order from this District Court in case 2017-1557 CCC, which directed the Puerto Rico Division of Demographic Registry and Vital Statistics of the Commonwealth (hereinafter the "Demographic Registry") to change

the gender that appears in their birth certificates from one gender to another (male or female). *Arroyo González v Rosselló Nevares*, 305 F. Supp.3d 327 (D.P.R. 2018).

> The Demographic Registry of the Commonwealth of Puerto Rico **SHALL ADOPT** the criteria of the Department of Transportation and Public Work's "Request to Change Transgender Persons' Gender Marker," DTOP-DIS-324 Form, as **the** application form to be submitted by transgenders and which shall be accepted as the first step towards the issuance of their new birth certificates, in compliance with the Court's mandate. *See* Attachment A to the Judgment. The transgender individual shall present the application accompanied by one of the following documents: (1) a passport that reflects a person's true gender, whether female or male, (2) a driver's license that reflects the person's true gender, whether female or male, or (3) a certification issued by a healthcare professional or mental health professional with whom the person has a doctor-patient relationship stating, based on his or her professional opinion, the true gender identity of the applicant, whether female or male, and that it is expected that this will continue to be the gender with which the applicant will identify him or herself in the future. If the applicant has not had any of the documents requested previously issued, a health care professional or mental health professional with whom the applicant has a doctor-patient relationship must certify based on his or her professional opinion that the true gender identity of the applicant is ( ) female or ( ) male and that it is expected that this will continue to be the gender with which the applicant will identify him or herself in the future. *See* Part B of DTOP-DIS-32 Form, which is included as Attachment A to the Judgment.

*Arroyo González*, 305 F. Supp.3d at 334 (emphasis in the original). This decision is final and binds the Demographic Registry officials to register transgender persons as they identify themselves.

Nonetheless, the Demographic Registry officials have not realized that this decision also requires them to register nonbinary people. First, because by recognizing gender and not external physical organs as the fundamental category that will be considered by the Registry, it now must recognized that sex and gender are a continuum beyond the male/female binary and, thus, must cease relying on an inaccurate assumption that sex is binary. Second, because the exclusion of individuals who are neither male nor female unless they falsely describe themselves as exclusively male or

female cannot survive the heightened scrutiny required for sex-based classifications. Third, because the government's refusal to recognize a person's sex not only denies a transgender person equal dignity and respect by undermining, indeed denying, their very identity and existence, but it also authorizes and invites other public and private entities to similarly discriminate and deny recognition. Finally, because the Order instructed that "[t]he transgender individual […] present the application accompanied by […]: (1) a passport that reflects a person's true gender […]", thus recognizing that the U.S. passport is a legally binding document for the Commonwealth. Since following the 2018 decision the U.S. State Department has included nonbinary people and the X marker in the passport, that decision now mandates the Registry to include said symbol in their application for sex change.

**B) IRREPARABLE HARM**

The concept of "irreparable harm" in the context of equitable injunctive relief refers to an injury that is not subject to compensation by traditional means such as through monetary compensation. *Ross-Simons of Warwick, Inc.*, 102 F.3d at 18. Precisely that is the type of injury that plaintiffs face.

Shall the Registry's policy be allowed to stand, plaintiffs would lose their most fundamental right: the right to identify themselves freely without unreasonable constraints form the government. In its time-honored dissent in *Olmstead v. United States,* 277 U.S. 438, 478 (1928), Justice Brandeis referred to the right to privacy as "the most comprehensive of rights and the right most valued by civilized men." The concept of human dignity should be one of the cornerstones of our legal system . . .

> Generally, for a society to respect human dignity, the special moral relations between people should be left undisturbed. Government should confine itself to

6

making sure that this voluntarism is not abridged, no matter how tempting it might be to use its coercive powers to attain some worthy goal. . ."

Machan, *Human Dignity and the Law,* 26 De Paul L. Rev. 807, 819 (1977).

While the Court may not dispense with the irreparable harm requirement, certain constitutional violations are deemed so fundamental that the government's denial, even for minimal periods of time, constitute irreparable injury, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ["The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"].  In *Maine Forest Prod. Council v. Cormier*, 586 F. Supp. 3d 22, 62 (D. Me.), aff'd, 51 F.4th 1 (1st Cir. 2022), the Court recognized that

> [a]lthough constitutional violations are      not      per      se irreparable harm, certain constitutional violations are more likely to bring about irreparable harm, namely "infringements of free speech, association, privacy or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by any subsequent relief." *Vaqueria Tres Monjitas, Inc.*, 587 F.3d at 484 (quoting *Pub. Serv. Co. of N.H. v. W. Newbury*, 835 F.2d 380, 382 (1st Cir. 1987)).

### C) BALANCE OF THE HARDSHIPS

This part of the analysis requires to compare and contrast how the movant would be affected by the denial of injunctive relief with how the respondent would be affected if the injunction is issued. *Mercado-Salinas v. Bart Enters. Int'l*, 671 F.3d 12, 19 (1st Cir. 2011).  Every executive official of the Commonwealth is required to make an oath to preserve the Constitutions that guide our legal system. To the extent that the Demographic Registry's recognition of nonbinary's persons identity will only result in the enforcement of the Commonwealth of Puerto Rico's ("Commonwealth") public policy that prohibits discrimination by public agencies and instrumentalities based on gender

identity [OE-2008-57 of November 14, 2008] and comply with the constitutional mandates, there are no hardships to balance.

**D) PUBLIC INTEREST CONSIDERATIONS**

It is settled law that "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences of employing the extraordinary remedy of injunction". *Weinberger v. Romero-Barceló*, 456 U.S. 305, 312 (1982). This is understandable given the fact that many of the cases in which an injunctive relief is sought involve important government or corporate policy matters that affect many more people than those actually named in the caption of the case. In this case, though, the recognition of nonbinary people in Puerto Rico's birth certificate will only be enforced as to petitioners and any other person [non binary or intersex individuals] who voluntarily requests said designation. Moreover, since it would only mean that this Court is enforcing the Commonwealth's public policy against gender discrimination, the public interest falls on the side of granting the injunctive relief.

**WHEREFORE** it is respectfully requested from this Honorable Court that the relief requested in the foregoing action be hereby **GRANTED**.

**CERTIFICATE OF SERVICE**

It is hereby certified that true and exact copy of the foregoing will be served on the defendant along with the service papers.

In San Juan, Puerto Rico this 27th day of October, 2023.

S/ *Johanna M. Emmanuelli Huertas*
JOHANNA M. EMMANUELLI HUERTAS
USDC-PR #210506 Email: jmeh@poalaw.com
94 Calle Ponce, San Juan, PR 00917
Tel.: (787)342-6499

8