**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Ínaru Nadia de la Fuente Díaz, et als.<br>*Plaintiffs*<br>vs<br>Pedro Pierluisi, et als.<br>*Defendants* | Civil No. 23-cv-1544 (MAJ)<br>COMPLAINT FOR DECLARATORY,<br>INJUNCTIVE AND OTHER RELIEFS |

# JOINT INITIAL SCHEDULING CONFERENCE MEMORANDUM

**TO THE HONORABLE COURT:**

**COME NOW** the parties, through the undersigned attorneys and respectfully, **SET FORTH** and **PRAY**:

## I. THEORY OF THE CASE

**Plaintiff**

Plaintiffs are all residents of Puerto Rico, whose birth certificates are under the custody of the Demographic Registry of PR. Through hand-delivered letter, they requested that an X marker be added to the Registry alongside Female and Male, as has been done by the US Passport Agency. They informed the Registry that, if they followed the instructions given by the agency when a sex change is requested and, thus, presented a US Passport —as directed by *Arroyo González v Rosselló Nevares*, 305 F. Supp.3d 327 (D.P.R. 2018)[1]—the

[1] This decision was later codified at *Civil Code of 2020*, Art. 694, second paragrah: "Nothing here construed will undermine the process established in cases of a request for change of gender in a birth certificate. These requests will be accompanied with the Passport, driver's license or a certification submitted by a health professional who has a physician-patient relationship and certifies the applicant's gender. In these cases, the

agency would not be able to accommodate the sex identification of the Passport because there is no X in the Registry[2].

Although the Registry has traditionally linked the sex identification in their Registry as that pertaining to the binary sexual categories and, more so, to the physical identification made and recorded at birth, after *Arroyo* they were set aside or, at least, modified, by the concepts of gender and gender identification[3]. Since then, a citizen only needs to present one of several listed document that somehow "certifies" the gender with which the person identifies, totally independent of their physical sex, both at birth and at the time of the change request. Therefore, the Registry's insistence in keeping up with the binary-sex-birth formula is misplaced and has created an inappropriate division among transgendered people, by granting some a change in their birth sex inscription and not to others. As the Court affirmed in *Obdergefell v Hodges*, 576 U.S. 644, 664 (2015) at 664, it is the Court's duty to "exercise reasoned judgment in identifying interests of the person so fundamental that the State must accord them its respect."

**Defendants**

On July 5th, 2023, the Demographic Registry of Puerto Rico received a consultation letter from Amnesty International, Puerto Rico Chapter regarding the inclusion of an "X" alternative in the Birth Certificate for those persons that do not identify as Female or Male. (Docket No. 12-2). Codefendant Wanda Llovet Díaz, Executive Director of the Demographic Registry of the Department of Health, responded to Amnesty International's request stating that they were unable

---

registry shall issue the certificate, safeguarding the right to privacy."(Translation approved by parties) 31 P.R. Laws ann. tit. 31 §7655.

[2] Only one of the plaintiffs has already obtained a US Passport, but all others would be in the same position if they were to receive one.

[3] In fact, the Commonwealth public policy against discriminarion included gender identity as a prohibited category through Law 22-2013.

to include "X" as an alternative for change of gender because neither the legislature nor the courts had addressed this issue.

The Puerto Rico Department of Health and its division of Demographic Registry and Vital Statistics are part of the executive branch of government. The executive branch contemplates the authority to execute, carry out, and enforce the laws. The executive branch does not make the laws in the first instance. See Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 587 (1952) ("In the framework of our Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker"). As a result, the Department of Health and the Division of Demographic Registry and Vital Statistics cannot authorize Plaintiffs' request for change in the birth certificate without legislation to that effect or a court order.

## II. APPLICABLE LAW

**Plaintiff**

Gender identity has long been recognized through different federal laws as an integral part of the term "sex". See *Bostock v Clayton County, Georgia*, 590 U.S. 644 (2020). In *Arroyo*, supra, the Court relies in the long tradition of recognizing that the Fourteenth Amendment embraces the citizens' right to autonomy in personal decisions, such as "our own concept of existence, of meaning, of the universe, and of the mystery of human life." *Arroyo* at 333, quoting *Planned Parenthood v Casey*, 505 U.S. 833, 851 (1992), reversed on other grounds. In *Obdergefell v Hodges*, 576 U.S. 644, 664 (2015), the Court stated: "In addition, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs." Nothing is more fundamental to a person's livelihood than how they conceive of themselves and how they identify as human beings. This is an integral part of personhood and so private that it does not affect any other

person's rights.

The state's position is that they are unable to make any changes in the certificate because it is the legislature that must act. Since all public officers took an oath to uphold the Constitutions both of the United States and the Commonwealth's, theirs' is an accomodating position, one of avoidance. Their inaction promotes the belief that all humans, no matter how civilization develops, must continue to adhere to old categories. This, as has been amply discussed in the decisions quoted above and many others, runs contrary to science's recognition of the fluidity of the concept of sex, beyond the narrow perspective of olden times. In *Obdergefell* the Court explicitly confronted this "it has been always like that" argument when determining if the institution of marriage, which was traditionally only permitted to opposite-sex partners, could include same-sex partners. On the issue, the Court expressed at 665:

> It cannot be denied that his Court's cases describing the right to marry <u>presumes</u> a relationship involving opposite-sex partners. The Court, like many institutions, has made <u>assumptions</u> defined by the world and time of which it is a part. [emphasis added]

When, as was the case then and is now, the Court receives a citizen that contradicts those assumptions, it is the Court's duty to address "a claim to liberty". Id at 664. At present, our world has changed and, thus, it is the Court's duty to recognize it.

On the other hand, *Arroyo*, supra, eloquently explains how the First Amendment's prohibition of "compel speech" applies equally in this case. If plaintiffs' birth certificate and other official documents provided by the Commonwealth as the only Commonwealth's official identification continue to contradict their U.S. Passport and even other documents they may later obtain in other jurisdictions, the Commonwealth would be compelling them to identify in a manner that is not of their choosing and that do not correspond to their

gender identification, both personally and medically. That, as *Arroyo* maintains, is prohibited compelled speech.

**Defendants:**

On June 1, 2020, the Government of Puerto Rico approved Act No. 55 of June 1st, 2020, as amended, also known as the Puerto Rico Civil Code, P.R. Laws ann. tit. 31 §5311, et seq. The Civil Code is a general law which rules multiple issues related to human life and daily human interactions. See Statement of Motives of Puerto Rico Civil Code, Act No. 55 of June 1st, 2020, as amended. It states that all facts and judicial acts concerning a person's civil status will be registered in the Demographic Registry of Puerto Rico. Its organization and administration will be ruled by special legislation. P.R. Law ann. tit. 31 §7631. The Demographic Registry will have registration of the circumstances of birth, the registered person's name, and the person's sex at birth, among other demographic facts. Id. at §7632.

Article 694 of the Civil Code recognizes the right of transgender individuals to change the gender marker in their birth certificates to reflect the applicants' true gender, whether its male or female.[4] However, the Puerto Rico Legislative Assembly did not legislate nor recognize in its rule of hermeneutics a nonbinary gender other than male or female. Pursuant to the Puerto Rico Civil Code, the Vital Statistics Registry Act of Puerto Rico and as ruled by the Puerto Rico Supreme Court, there are only two (2) ways for the correction of mistakes in

[4] This newly approved Civil Code incorporated the ruling issued by a sister court in this district. In Arroyo González v. Rosselló Nevares, 305 F. Supp. 3d 327 (D.P.R. 2018) the court recognized the process for a person to request a change of gender in their birth certificate. In the cited case, the district court issued an Order recognizing the right of transgender individuals to change the gender marker in their birth certificates with the applicants' true gender. Additionally, the court ordered the Demographic Registry of the Government of Puerto Rico to adopt the criteria of the Department of Transportation and Public Works "Request to Change Transgender Person's Gender Marker" as the application form to be submitted and accepted as the first step toward the issuance of their new birth certificates. In their application, individuals shall also present an official document, whether a passport, driver's license or a certification issued by a healthcare professional, that reflects that persons' true gender, whether male or female. Arroyo, supra., at 333-334. However, neither the District Court nor the Legislative Assembly recognized a nonbinary gender marker.

a birth certificate: (i) before the certificate is registered and (ii) after the certificate has been registered at the Department of Health. The Puerto Rico Supreme Court has interpreted the Vital Statistics Registry Act of Puerto Rico restrictively, concluding that any change requested must have been previously authorized by law. Ex Parte Delgado-Hernández, 165 D.P.R. at 189; Ex Parte León Rosario, 109 D.P.R. 804 (1980).

Plaintiffs failed to identify a fundamental right that is protected by the Fourteenth Amendment. "Constitutional analysis must begin with 'the language of the instrument,' which offers a 'fixed standard' for ascertaining what our founding documents mean." Dobbs v. Jackson Women's Health Org., 597 U.S. 215, 235 (2022). When Amnesty International Puerto Rico Chapter requested an amendment to the application for gender change in Vital Events Certification to include "X" as an alternative for nonbinary, intersex or gender nonconforming persons, the Department of Health ultimately responded that since the Legislative Assembly nor the courts had addressed this particular request, they were impeded from making the change. (Docket No. 12, ¶ 8; Docket Nos. 12-2, 12-3). Defendants' application of its policy is not conscience shocking, extreme, egregious, or horrifying. Therefore, Plaintiffs' substantive due process claim must be dismissed with prejudice.

Even assuming for argument's sake only that Plaintiffs adequately alleged a conscience shocking conduct by the Department of Health, they failed to plead a cognizable claim of liberty or property interest. The Constitution makes no express reference to a right to privacy concerning one's gender, nor does it reference a right to be treated consistent with one's gender identity. Therefore, Plaintiffs must show that the right is somehow implicit in the constitutional text and that the Due Process clause provides substantive protection for Plaintiff's right to privacy and autonomy under the "liberty" interest. Dobbs, supra. at 215.

Here, Plaintiffs do not allege sufficient facts for this court to conclude that the right to amend the sex designation on their birth certificate has historically been protected. They claim that since the District Court's decision in Arroyo González v. Rosselló Nevares, 305 F.Supp. 3d 327 (D.P.R. 2018), transgender people have the right to change the gender that appears in their birth certificates from one gender to another (male or female), but point to no authority suggesting that a non-binary classification has existed prior to the year 1931, when the Demographic Registry became a formal and credible statistical registry. See Statement of Motives, Act No. 220 of August 9, 1998.

Plaintiffs allege that Defendants' birth certificate policy and practice compels transgender nonbinary people to identify with a sex and identity inconsistent with who they are. (Docket No. 12, ¶ 72). However, the content in a birth certificate is government speech and therefore does not imply the First Amendment. Birth certificates are a communication of data chosen by the Commonwealth of Puerto Rico, on behalf of the government. A birth certificate is spoken by the government, who is certifying the information therein to be accurate, as opposed to the birth certificate holder. The State determines what information is required on a birth certificate, and what information can and cannot be subsequently amended. Walker v. Texas Div., 576 U.S. 200, 212 (2015) ("[L]icense plates are, essentially, government ID's and issuers of ID typically do not permit the placement on their ID's of message[s] which they do not wish to be associated"). If state law permitted individuals to communicate their own messages in birth certificates without restriction, birth certificates would cease to function as reliable government-issued identification.

## III. JURISDICTIONAL ISSUES

Parties agree that this Honorable Court has subject matter jurisdiction over this

matter pursuant to 28 U.S.C. § 1331.

## IV. CONSENT TO PROCEED BEFORE A MAGISTRATE JUDGE

Parties do not consent to magistrate judge jurisdiction.

## V. COMPLIANCE WITH INITIAL DISCLOSURES

**Plaintiffs**

All documents subject to discovery in possession of plaintiffs have been provided with the Complaint.

**Defendants**

Defendants are currently not in possession of any documentary evidence regarding the present case.

## VI. ELECTRONIC DISCOVERY ISSUES

The parties have not identified any electronic discovery issues nor are they anticipated.

## VII. JOINT PROPOSED DISCOVERY SCHEDULE

Although the parties do not anticipate the need of discovery, they have agreed to the following calendar:

April 5, 2024: Present all written discovery requests and requests for depositions;

June 28, 2024: All discovery and depositions must be concluded.

If, as the parties anticipate, the case does not require any further discovery, the Court will be informed so that it can decide any dispositive motions presented.

## VIII. RELATED CASES

The parties are not aware of any other pending case.

## IX. OTHER MATTERS

None.

## CERTIFICATE OF SERVICE

The undersigned counsels hereby certify that the instant document has been filed with the Court's CM/ECF System, which will simultaneously serve notice on all counsels of record to their respective registered e-mail addresses. Any non-registered attorneys and/or parties will be served via regular mail.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 7th day of March, 2024.

**FOR THE PLAINTIFF:**

Johanna Emmanuelli Huertas
94 Calle Ponce
Urb. Pérez Morris
San Juan, PR. 00917
787-342-6499
jmeh@mac.com
jmeh@poalaw.com
**s/Johanna Emmanuelli Huertas**

**FOR THE DEFENDANT:**

**DOMINGO EMANUELLI-HERNÁNDEZ**
Secretary of Justice

**SUSANA I. PEÑAGARÍCANO-BROWN**
Deputy Secretary in Charge of Civil Litigation

**MARCIA I. PÉREZ-LLAVONA**
Director of Legal Affairs
Federal Litigation and Bankruptcy Division

*S/ Diana I. Pérez-Carlo*
**DIANA I. PÉREZ-CARLO**
USDC No. 307313
Email: diana.perez@justicia.pr.gov
Tel. (787) 721-2900, ext. 1419

**DEPARTMENT OF JUSTICE OF PUERTO RICO**
Federal Litigation Division
PO Box 9020192
San Juan Puerto Rico, 00902-0192