**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**ÍNARU NADIA DE LA FUENTE DÍAZ, *et al.*,**

***Plaintiffs*,**

**v.**

**JENNIFFER GONZÁLEZ COLÓN, *et al.*,**

***Defendants*.**

Civ. No. 23-01544 (MAJ)

**OPINION AND ORDER**

## I. Introduction

This is an action brought by six nonbinary individuals born in Puerto Rico, who claim that the Commonwealth's current Birth Certificate Policy violates the right to equal protection under the Fourteenth Amendment of the United States Constitution. Since 2018, transgender individuals in Puerto Rico have been permitted to amend the gender marker on their birth certificate, from either male to female or from female to male. But the Plaintiffs in this case are nonbinary, meaning that their gender identity is neither male nor female. Their request is simple: to be permitted to have a gender marker on their birth certificate that reflects their true gender identity, like everyone else. Specifically, Plaintiffs request the Court to order the Demographic Registry of Puerto Rico to modify its application to amend a Puerto Rican birth certificate, to include an option to change one's gender marker to an "X."

Defendants oppose Plaintiffs' request, arguing that the government of the Commonwealth of Puerto Rico has a legitimate interest in maintaining vital records and statistics regarding its citizens. Yet this argument ignores the fact that the Commonwealth already permits its citizens to amend information on their birth certificates for various reasons, including to modify the gender marker, and has already enacted legislation to ensure that in the case of such modifications, the original, unaltered birth certificates are preserved by the state.

The Court thus finds that there is no rational basis to deny Plaintiffs' request. The current Birth Certificate Policy of the Commonwealth of Puerto Rico arbitrarily distinguishes between binary and nonbinary individuals and subjects nonbinary individuals to disfavored treatment, without any justification for doing so. In such cases, it is the duty of the federal courts to intervene, to guarantee the equal protection of all persons under the law.

Plaintiffs' Motion for Summary Judgment is therefore **GRANTED**. Defendants are hereby **ORDERED** to amend the Application for Gender Change form to include an option to select an "X" as one's gender marker on one's birth certificate. In doing so, Puerto Rico will join at least seventeen other states who already permit residents to include a nonbinary or gender-neutral sex or gender marker on their birth certificates.[1]

---

[1] At the time of the publishing of this Opinion and Order, these states include: California, *see* Form VS 24B, DEP'T OF PUB. HEATH – VITAL RECS., https://www.cdph.ca.gov/CDPH%20Document%20Library/ControlledForms/VS24B.pdf (last visited May 14, 2025); Colorado, *see* Form to Correct or Change a Colorado Birth Certificate, DEP'T OF PUB. HEALTH & ENV'T, https://drive.google.com/file/d/12_rmiKpawHmLRBuLQiuxulojQAVT93D/view (last visited May 14, 2025); Sex Designation Form, DEP'T OF PUB. HEALTH & ENV'T, HTTPS://DRIVE.GOOGLE.COM/FILE/D/1OCAQCA1AONUZR1ZIZESCXA19YA8OIXZX/VIEW (last visited May 14, 2025); Connecticut, *see* Instructions and Forms for Amending Sex on Birth Certificate, DEP'T OF PUBLIC HEALTH, https://portal.ct.gov/-/media/departments-and-agencies/dph/hisr/vr/instructions-and-forms-for-amending-sex-on-birth-certificate-12_2023.pdf?rev=e2d9e5ffde474d20bc2cf1781146478&hash=F0CCFF834F103DA8788EDD64F62C7FA0 (last visited May 14, 2025); District of Columbia, *see* Gender Designation Application, DC HEALTH CTR. FOR POL'Y PLANNING &

## II.     Background

Plaintiffs in this case are Ínaru Nadia de la Fuente Díaz, Maru Rosa Hernández, André Rodil, Yelvy Vélez Bartolomei, Gé Castro Cruz, and Deni Juste (collectively "Plaintiffs"). On October 27, 2023, Plaintiffs filed this action against the Governor of Puerto Rico, the Secretary of the Department of Health of Puerto Rico, and the Director of the Division of Demographic Registry and Vital Statistics of Puerto Rico (the "Demographic Registry"), each in their official capacities (collectively "Defendants"). (**ECF 1**).[2] Plaintiffs twice amended their complaint, filing the operative Complaint on

---

EVALUATION – VITAL RECS. DIV., https://dchealth.dc.gov/sites/default/files/dc/sites/doh/page_content/attachments/Gender%20Designation%20Application_0.pdf (last visited May 14, 2025); Illinois, *see* Gender Reassignment, DEP'T OF PUB. HEALTH, https://dph.illinois.gov/topics-services/birth-death-other-records/birth-records/gender-reassignment.html (last visited May 14, 2025); Maine, *see* Application to Change the Name and/or Sex on a Record of Live Birth to Support Gender Identity, DEP'T OF HEALTH & HUM. SERVS., https://www.maine.gov/dhhs/mecdc/public-health-systems/data-research/vital-records/documents/pdf-files/Gender%20Marker%20Change.pdf (last visited May 14, 2025); Michigan, *see* State of Michigan Sex Designation Form, DIV. FOR VITAL RECS. & HEALTH STATS., https://www.michigan.gov/-/media/Project/Websites/mdhhs/Folder3/Folder17/Folder217/Sex_Designation_Application.pdf?rev=950cb2ba538a449c9101d4b77e9dc22a (last visited May 14, 2025); Nevada, *see* Application for Correction of a Record, DIV. OF PUB. & BEHAVIORAL HEALTH, https://dpbh.nv.gov/uploadedFiles/dpbh.nv.gov/content/Programs/BirthDeath/dta/Forms/Affidavit%20Corrections%20Packet.pdf (last visited May 14, 2025); Amending or Correcting a Birth Certificate, DIV. OF PUB. & BEHAVIORAL HEALTH, https://dpbh.nv.gov/uploadedFiles/dpbh.nv.gov/content/Programs/BirthDeath/dta/Forms/Corrections%20-%20Instructions%20Packet%20-%20Corrections.pdf (last visited May 14, 2025); New Jersey, *see* N.J.S.A. 26:8-40.12; New Mexico, *see* N.M.S.A. § 24-14-25; Ohio, *see* Changing or Correcting a Birth Record, DEP'T OF HEALTH, https://odh.ohio.gov/know-our-programs/vital-statistics/changing-correcting-birth-record (last visited May 14, 2025); Oklahoma, *see Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024); Oregon, *see* Change Birth Record to Support Gender Identity, HEALTH AUTHORITY, https://www.oregon.gov/oha/PH/BIRTHDEATHCERTIFICATES/Pages/ChangeBirthSupportGenderIdentity.aspx#:~:text=Name%20and%20Sex%20Designation%20Changes,to%20get%20a%20court%20order. (last visited May 14, 2025); Rhode Island, *see* Office of Vital Records Requirements and Fees for Changes to Birth, Marriage, or Death Records, DEP'T OF HEALTH, https://health.ri.gov/sites/g/files/xkgbur1006/files/2025-01/RI-Vital-Records-Correction-and-Amendment-Requirements.pdf (last visited May 14, 2025); Vermont, *see* Affidavit of Gender Identity, DEP'T OF HEALTH, https://www.healthvermont.gov/sites/default/files/documents/pdf/HS-VR-Gender-Identity-Affidavit-withFormFields.pdf (last visited May 14, 2025); and Washington, *see* Request to Change Sex Designation on a Birth Certificate for an Adult, DEP'T OF HEALTH, https://doh.wa.gov/sites/default/files/legacy/Documents/Pubs/422-143-SexDesignationChangeAdult.pdf (last visited May 14, 2025). *See also, generally,* Movement Advancement Project, *Identity Document Laws and Policies*, http://www.lgbtmap.org/equality-maps/identity_document_laws (last visited May 30, 2025).

[2]     When the Complaint was filed, the Honorable Pedro Pierluisi Urrutia was the Governor of Puerto Rico and Dr. Carlos Mellado López was the Secretary of the Department of Health. Both officers were automatically substituted as parties to this action upon the installment of a new gubernatorial administration on January 2, 2025. FED. R. CIV. P. 25(d); (**ECF 52 at 2 n.1**). Governor Pierluisi has been

November 15, 2023. (**ECF 12**) ("the Complaint").

Plaintiffs' Complaint seeks injunctive and declaratory relief pursuant to 42 U.S.C. Section 1983 for violations of Plaintiffs' rights under the United States Constitution. (**Id.**). Specifically, Plaintiffs challenge the constitutionality of Puerto Rico's current practice of allowing individuals with a binary gender identity to correct the gender marker on their birth certificates to align with their true gender identity (either from male to female, or from female to male), while not allowing nonbinary individuals (individuals whose gender identity is neither male nor female) to do the same (hereinafter, the "Birth Certificate Policy").

### A. From *Arroyo González v. Rosselló Nevares* (2018) to the Present

To understand Puerto Rico's current birth certificate policy and Plaintiffs' requested changes to that policy, it is necessary to provide a brief historical and procedural background. Plaintiffs seek to build on the 2018 landmark decision from this District reached by the Honorable Judge Carmen C. Cerezo in *Arroyo González v. Rosselló Nevares*,[3] wherein the court ordered the Demographic Registry to permit transgender individuals to amend the gender marker on their birth certificate, either from "male" to "female" or from "female" to "male." 305 F. Supp. 3d 327, 334 (D.P.R. 2018).[4] The court specified that the process created by the Demographic Registry must ensure

substituted by the current Governor of Puerto Rico, Jenniffer González Colón. Dr. Mellado López has been substituted by the current Secretary of the Department of Health, Dr. Victor Ramos Otero. Both are sued in their official capacities. (**ECF 1, 12**).

3 The present issue before the Court, regarding nonbinary individuals, was not presented to or decided by the *Arroyo* court. The holding in that case was premised on a constitutional right to informational privacy, which is not implicated in the instant case.

4 Specifically, the court ordered that the new application form be based on a form already created by the Department of Transportation and Public Works, through which individuals could apply to change the gender marker on their drivers' licenses and state identification cards. *Id.* at 335. The Department of Transportation form required individuals to select whether they wanted to change the gender marker on their license to "Female" or "Male," without an option for a nonbinary gender marker. *Id.* at Attachment A (Form DTOP-DIS-324).

that the original birth certificate be kept in a sealed file in the Registry.[5]

Pursuant to the court's order, the Demographic Registry then created a protocol by which transgender individuals could request to correct the gender marker on their birth certificates from either "Male" to "Female" or from "Female" to "Male." (**ECF 12 at 2 ¶ 4**); (**ECF 29 at 3 ¶¶ 4, 5**); (**ECF 12-1**). The current protocol requires an applicant to submit a designated form ("Application for Gender Change") along with either: a Driver's license reflecting the individual's true gender, a passport reflecting their true gender, or a certification of the applicant's true gender issued by a professional who has a physician-patient relationship with the applicant. (**ECF 12-1**); *see also Arroyo*, 305 F. Supp. 3d at 335.

Article 694 of the Puerto Rico Civil Code, in turn, provides that, except under limited circumstances which are not implicated by this case, "[a]mendments to a person's sex at birth cannot be authorized in the *original* birth record." 31 L.P.R.A. § 7655 (2020) (emphasis added).[6] The Article further clarifies that:

Nothing set forth herein detracts from the process established for requesting a

---

5 Specifically, the court ordered that the process must mirror the process which already existed for issuing an amended birth certificate in the case of adoptions under 24 L.P.R.A. § 1136. *Arroyo*, 305 F. Supp. 3d at 334. The relevant statute, in place in Puerto Rico since 1931, reads:

> If the birth of an adoptee had previously been registered in the Vital Statistics Registry, **the registration certificate of such birth shall be substituted for another showing the new legal status** of the registered minor, as if he were a legitimate child of the adopters; **Provided, That the original birth certificate** of the adoptee, the judgment of the court, and other documents **shall be kept in the Registry in a sealed envelope and shall be confidential documents.** No registration certificate issued by the Registry shall contain data from the original registration, unless the petitioner of said certificate has expressly requested the showing of such facts and a competent court has so ordered for justified causes. Provided, That such authorization shall not be required when the applicant is the adopter or the adoptee.

24 L.P.R.A. § 1136 (emphasis added) (official translation).

6 Translation provided by an official interpreter certified by the Administrative Office of the United States Courts, in accordance with District of Puerto Rico Local Rule 5(c)(1)). The statute provides a narrow exception in cases "in which medical experts determine that there is an ambiguity regarding the original sex at birth, and that fact is recorded in the Demographic Registry[.]" 31 L.P.R.A. § 7655. This exception merely reflects the factual reality that some children are born intersex or with ambiguous biological sex characteristics. In such cases, a court may order the substitution of the original birth record. This exception is not implicated by the facts of this case.

> gender change in the birth certificate. These applications shall be accompanied by a passport, driver's license or a certification issued by a health professional who has a doctor-patient relationship with the applicant attesting to the gender. In these cases, the Registry shall issue the certificate, safeguarding privacy rights.

*Id.* In short, Puerto Rico law permits individuals to amend the gender marker on their birth certificates if certain procedural requirements are met, yet requires that the *original* birth certificate be maintained without modification.

Plaintiffs in the instant case now seek an Order requiring the Demographic Registry to amend its Application for Gender Change form to include a third gender marker, an "X," for those individuals whose gender identity is nonbinary. (**ECF 12 at 20 ¶ d–21 ¶ e**). Plaintiffs also seek a writ of mandamus compelling Defendants to immediately process their applications to amend their birth certificates. (**Id. at 21 ¶ f**). The parties agreed that there were no factual disputes in the case such that there was no need to conduct discovery. (**ECF 33**). On September 6, 2024, Plaintiffs filed their Motion for Summary Judgment. (**ECF 36**) ("Plaintiffs' Motion"). Defendants filed their Opposition to Plaintiffs' Motion for Summary Judgment and Cross Motion for Summary Judgment on January 10, 2025. (**ECF 52**).

The Court now holds that there is no rational basis for the classification between binary and nonbinary individuals created by the Birth Certificate Policy, and that the Policy therefore violates the Equal Protection Clause.[7] Plaintiffs' Motion for Summary Judgment is therefore **GRANTED**.

---

7 The Complaint also alleges that the Birth Certificate Policy violates the First Amendment of the United States Constitution (**ECF 12 at 18–19**), as well as the substantive due process clause of the Fourteenth Amendment (**Id. at 16–18**). Under the doctrine of constitutional avoidance, federal courts must avoid deciding "constitutional issues where alternative grounds for resolution are available." *Am. C.L. Union of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52 (1st Cir. 2013); *see also Mills v. Rogers*, 457 U.S. 291, 305 (1982) ("It is this Court's settled policy to avoid unnecessary decisions of constitutional issues."). Because summary judgment for the Plaintiff is warranted under the Equal Protection Clause of the Fourteenth Amendment, the Court declines to reach the remaining constitutional issues.

## III. Findings of Fact

In making the below findings of fact, the Court analyzed Plaintiffs' Amended Complaint (**ECF 12**), Defendants' Answer to the Amended Complaint (**ECF 29**), Plaintiffs' Motion for Summary Judgment (**ECF 36**), Defendants' Memorandum in Opposition to Summary Judgment and Cross Motion for Summary Judgment (**ECF 52**), all exhibits and attachments to these filings, and the totality of the record.

1. Plaintiffs are persons living in Puerto Rico who are nonbinary. (**ECF 36 at 4 ¶ 8 – 5 ¶ 13**); (**ECF 52-2 at 3 ¶ 8 – 4 ¶ 13**).

2. Gender identity is a person's internal sense of their own gender. (**ECF 36 at 5 ¶ 18**); (**ECF 52-2 at 5 ¶ 18**).

3. Individuals whose gender identity is either "male" or "female" have a binary gender identity. Individuals whose gender identity is neither male nor female have a nonbinary gender identity. (**ECF 36 at 5 ¶ 16**); (**ECF 52-2 at 5 ¶ 16**).

4. The Demographic Registry has a protocol by which individuals can request to correct the gender marker on their birth certificates. (**ECF 12-1**); (**ECF 12 at 2 ¶ 4**); (**ECF 29 at 3 ¶¶ 4, 5**). This protocol consists of submitting an application form ("Application for Gender Change") along with either: a Driver's license, a passport, or a certification issued by a health or behavioral professional who has a physician-patient relationship with the applicant. (**ECF 12-1**).

5. The current Application for Gender Change form includes only two possible gender markers, "Female" and "Male," and does not include an X or any other gender marker. (**ECF 12-1 at 2**); (**ECF 36 at 4 ¶¶ 2–3**); (**ECF 52-2 at 2 ¶¶ 2–3**).

6. Under the existing Birth Certificate Policy, it is possible for binary individuals to amend their birth certificates to reflect their true gender identity, but it is not possible for nonbinary individuals to do so. ("the Birth Certificate Policy"). (**ECF 12-1**); (**ECF 36 at 4 ¶ 7**); (**ECF 52-2 at 3 ¶ 7**).

## IV. Applicable Law and Analysis

### A. Summary Judgment

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a); *White v. Hewlett Packard Enterprise Co.*, 985 F.3d 61, 68 (1st Cir. 2021). A dispute is "genuine" if a reasonable factfinder could resolve it in favor of either party. *Flood v. Bank of Am. Corp.*, 780 F.3d 1, 7 (1st Cir. 2015). A fact is "material" if it has "the potential of affecting the outcome of the case." *Taite v. Bridgewater State Univ., Bd. of Trustees*, 999 F.3d 86, 93 (1st Cir. 2021). Both Plaintiffs and Defendants may move for summary judgment, and the filing of cross-motions for summary judgment does not alter the standard set by Rule 56, but "simply require[s] [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Group, Inc. v. Ferre Dev't, Inc.*, 241 F.3d 103, 107 (1st Cir. 2001). At the summary judgment stage, the Court must review the record as a whole and avoid gauging the weight of the evidence presented. *Pina v. Children's Place*, 740 F.3d 785, 802 (1st Cir. 2014).

**B. Equal Protection**

Plaintiffs claim that the Birth Certificate Policy violates their right to Equal Protection under the Fourteenth Amendment of the U.S. Constitution. (**ECF 12 at 13–16**).[8] The Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. It is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Courts typically conduct an Equal Protection analysis in cases where there exists a "disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." *See Ross v. Moffitt*, 417 U.S. 600, 609 (1974). Actions by state administrators are subject to the

---

[8] Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983, which establishes "a private right of action for violations of federally protected rights." *Marrero-Gutiérrez v. Molina*, 491 F.3d 1, 5 (1st Cir. 2007). Puerto Rico is a state for purposes of Section 1983. *Deniz v. Mun. of Guaynabo*, 285 F.3d 142, 146 (1st Cir. 2002).

protections of the Equal Protection Clause. *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 597 (2008) (citing *Raymond v. Chicago Union Traction Co.*, 207 U.S. 20, 35–36 (1907)).

### 1. Classification and Scrutiny

When considering a challenge to a governmental policy under the Equal Protection Clause, courts apply different tiers of scrutiny based on the type of classification made by the challenged policy. The highest level of scrutiny, called "strict scrutiny," is reserved for the "suspect" classes of race, religion, and national origin. *City of Cleburne*, 473 U.S. at 440. Where the government classifies on any of those bases, it bears the burden of demonstrating that the classification is "narrowly tailored to further [a] compelling governmental interest[]." *See, e.g.*, *Fisher v. Univ. of Texas*, 570 U.S. 297, 310 (2013) (quoting *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003)). Sex, on the other hand, is considered a "quasi-suspect" classification subject to an "intermediate" level of scrutiny, meaning that classifications based on sex are constitutional only if "substantially related to achieving an important governmental objective." *Massachusetts v. U.S. Dep't of Health & Hum. Servs.*, 682 F.3d 1, 9 (1st Cir. 2012), 9 n.5 (collecting cases applying the same standard); *see also United States v. Virginia (VMI)*, 518 U.S. 515, 532–33 (1996). Other types of classifications are considered "non-suspect" and are subject to rational basis review, meaning the classification must "bear[] a rational relation to some legitimate" state interest. *Romer v. Evans*, 517 U.S. 620, 631 (1996). Moral disapproval of or animus towards a specific group are not considered legitimate state interests under the rational basis test. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558, 577-78 (2003); *Trump v. Hawaii*, 585 U.S. 667, 706 (2018).

It is undisputed that the Birth Certificate Policy creates a classification between

people with a binary gender identity, on the one hand, and nonbinary people, on the other. This classification is apparent from the face of the Application for Gender Change form, which provides an option for binary applicants to choose a gender marker which aligns with their true gender, but does not provide an option which would allow nonbinary individuals to do so. (**ECF 12-1 at 2**). Defendants concede that the Birth Certificate Policy creates a classification, but dispute what level of scrutiny should apply to this classification. (**ECF 52 at 21–23**). Defendants argue that in the absence of binding caselaw establishing that nonbinary people are part of a suspect or quasi-suspect class, this group of individuals should be considered a non-suspect class, entitled only to rational basis review. (**Id. at 21**). Plaintiffs, on the other hand, argue that any classification based on gender or gender identity falls within the category of discrimination based on sex, and is therefore subject to intermediate scrutiny. (**ECF 36 at 16**) (citing *Bostock v Clayton, Georgia*, 590 U.S. 644 (2020)).

It is well settled that sex-based discrimination is subject to intermediate scrutiny under the Equal Protection Clause. *VMI*, 518 U.S. at 532–33. Although it is less clear where discrimination based on *gender identity* fits into the equation, a recent decision from our sister court in the District of Massachusetts found that discriminating against an individual because they are nonbinary necessarily constitutes discrimination based on sex. *Orr v. Trump*, 25-cv-10313, 2025 WL 1145271, at *9 (D. Mass. Apr. 18, 2025). Plaintiffs in that case seek to enjoin a recent federal policy requiring U.S. passports to reflect an individual's sex at birth, rather than their true gender identity. This policy change was made pursuant to an Executive Order and was hastily implemented only two days after the Order was signed, despite that binary transgender individuals have been permitted to amend the gender marker on their U.S. passports since 1992, and nonbinary

individuals have been permitted to change their gender marker to an "X" since 2021. *Id.* at *2, *4. The *Orr* court held that the new policy created a classification based on sex, both with regard to binary and nonbinary individuals, and was thus subject to intermediate scrutiny. *Id.* at *9 ("the reversal of the availability of an "X" marker on passports . . . draws a classification based on sex."). The district court then issued an emergency preliminary injunction against the new policy, finding that plaintiffs have demonstrated a substantial likelihood that the new policy is unconstitutional under both the intermediate scrutiny and rational basis tests. *Id.* at *12–13.

The *Orr* court is not alone in concluding that discrimination based on gender identity is entitled to intermediate scrutiny. Many courts have held, in a variety of contexts, that gender identity-based discrimination amounts to sex discrimination. *See, e.g., Bostock*, 590 U.S. at 660 (holding, in the Title VII context, that "it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex); *Fowler v. Stitt,* 104 F.4th 770, 800 (10th Cir. 2024) (collecting federal cases "that have applied *Bostock's* reasoning to equal protection claims" to hold that gender-based discrimination is entitled to intermediate scrutiny); *F.V. v. Barron*, 286 F. Supp. 3d 1131, 1144 (D. Idaho 2018) ("to conclude discrimination based on gender identity or transsexual status is not discrimination based on sex is to depart from advanced medical understanding in favor of archaic reasoning."). Other courts have reached the same conclusion with respect to transgender people based on their unique characteristics as a group, concluding that the group makes up a quasi-suspect class. *See, e.g. Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 610–614 (4th Cir. 2020) (collecting cases applying a four-part test to conclude that transgender individuals 1) have been historically subject to discrimination, 2) are as capable as others

of contributing value to society, 3) possess common, immutable characteristics that define them as a discrete group, and 4) constitute a minority lacking political power).

The Court finds the reasoning of such cases highly persuasive. However, Defendants are correct that the First Circuit lacks binding caselaw regarding the status of nonbinary people under the Equal Protection Clause. Federal courts must avoid ruling on novel constitutional questions "where alternative grounds for resolution are available." *Am. Civil Liberties Union of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52 (1st Cir. 2013). Since the Policy fails under even the lowest level of scrutiny, rational basis, the Court declines to decide now what level of scrutiny applies to the Birth Certificate Policy.

**2. Puerto Rico's Birth Certificate Policy is not supported by a rational basis.**

"In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *see also A.C. by Waithe v. McKee*, 23 F.4th 37, 46 (1st Cir. 2022). Plaintiffs who challenge the rationality of a government policy "have the burden to negate every conceivable basis that might support it." *F.C.C. v. Beach Commc'ns*, 508 U.S. at 315.

But while the rational basis standard is forgiving, it does still require that the Court be able to "ascertain some relation between the classification and the purpose it served." *Romer*, 517 U.S. at 633. "The search for the link between classification and objective gives substance to the Equal Protection Clause. . . . By requiring that the classification bear a rational relationship to an independent and legitimate legislative end, we ensure that

classifications are not drawn for the purpose of disadvantaging the group burdened by the law." *Id.* at 632–33. In other words, when state action cannot be explained by a legitimate state interest, it "rais[es] the inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected." *Id.* at 634; *see also City of Cleburne*, 473 U.S. at 440 (policies will fail rational basis review if they "appear . . . to rest on an irrational prejudice" against a non-suspect class); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 530–34 (1973) (the "bare . . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest."); *Trump v. Hawaii*, 585 U.S. at 706 (a challenged policy will fail rational basis review when a court cannot "discern a relationship" between the policy and a legitimate state interest or when the policy is "inexplicable by anything but animus."). Standing alone, "[m]oral disapproval of [a] group" is categorically "insufficient to satisfy rational basis review under the Equal Protection Clause." *Lawrence v. Texas*, 539 U.S. at 582 (O'Connor, J., concurring) (citing *U.S. Dep't of Agric. v. Moreno*, 413 U.S. at 534; *Romer*, 517 U.S. at 634–35).

Defendants have offered two purportedly legitimate interests in maintaining the Birth Certificate Policy. First, Defendants argue that "creating a new gender category, such as 'X,' without legislative approval undermines the separation of powers." (**ECF 52 at 21**). The separation of powers aspect of this argument is clearly misplaced, as it misunderstands the role of the federal courts in upholding the protections of the United States Constitution. It is "emphatically" the duty of the federal courts to strike down unconstitutional laws and policies created by state legislatures and administrative agencies. *See Marbury v. Madison*, 5 U.S. 137, 177–78 (1803); *see also, e.g.*, *Starlight Sugar Inc. v. Soto*, 909 F. Supp. 853 (D.P.R. 1995) (applying a Fourteenth Amendment equal protection analysis to preliminarily enjoin a regulation propounded by a Puerto

Rico state agency), *aff'd*, 114 F.3d 330 (1st Cir. 1997). Federal courts regularly rule on the constitutionality of state and federal policies which target transgender and/or nonbinary individuals. *See e.g. Arroyo,* 305 F. Supp. 3d at 333*; Orr v. Trump,* 2025 WL 1145271, at *10; *Fowler v. Stitt,* 104 F.4th 770, 800 (10th Cir. 2024) (discussed *infra*); *Ray v. McCloud*, 507 F. Supp. 3d 925 (S.D. Ohio 2020) (permanently enjoining enforcement of a state policy which prohibited changes to gender markers on birth certificates, because the policy failed both intermediate scrutiny and rational basis); *F.V. v. Barron*, 286 F. Supp. 3d at 1146 (holding that a state policy of refusing to consider applications for gender marker changes on birth certificates failed both intermediate scrutiny and rational basis, and ordering state agencies to begin accepting such applications). Defendants have not explained why they believe the Policy challenged here is uniquely immune to judicial review. If accepted, Defendants' proposed "separation of powers" rationale would exempt every imaginable state statute from judicial review, no matter its unconstitutionality. Yet the Court's responsibility to exercise judicial review over the constitutionality of an existing government policy is "the very essence of judicial duty." *Marbury*, 5 U.S. at 178. The Court will not now shirk this duty.

Nor does the Court accept Defendants' framing of Plaintiffs' claim as a request to "creat[e] a new gender category." (**ECF 52 at 21**). Plaintiffs have not created a "new gender category," nor have they asked the Demographic Registry to do so. Nonbinary people exist, and many state and federal agencies across the country and the world have adopted the use of an "X" gender marker to reflect this reality. Defendants have conceded that nonbinary people exist, that the Plaintiffs in this case are nonbinary, and that "gender identity is a person's internal sense of their own gender." (**ECF 36 at 4 ¶ 8 – 5 ¶ 13, 5 ¶ 18**); (**ECF 52-2 at 3 ¶ 8 – 4 ¶ 13, 5 ¶ 18**). Since 2008, the Puerto Rican government has

prohibited discrimination based on "gender or gender identity" in the provision of public services. OE-2008-57.[9] At least seventeen other states allow the gender marker on birth certificates to be amended to reflect a nonbinary gender identity,[10] and at least twenty-three states permit the same changes on drivers' licenses.[11] An "X" marker has been

---

9 Executive Order 2008-57 has been translated by an official interpreter certified by the Administrative Office of the United States Courts, in accordance with District of Puerto Rico Local Rule 5(c)(1). The relevant phrase in the original Spanish is "género o identidad de género."

10 *See* note 1, *supra*.

11 At the time of the publishing of this Opinion and Order, these states include: California, *see* Dep't of Motor Vehicles, *Change Your Name or Gender*, CA.GOV, https://www.ca.gov/departments/220/services/48/ (last visited May 30, 2025); Colorado, *see* Change of Sex Designation Instructions, DEP'T OF REVENUE, https://drive.google.com/file/d/1PeYZd7U43ar6Flg8lFAT1Etg1EPdLVUy/view (last visited May 30, 2025); Connecticut, *see* Gender Designation on a License or Identification Card, DEP'T OF MOTOR VEHICLES, https://portal.ct.gov/-/media/dmv/20/29/b-385.pdf?la=en (last visited May 30, 2025); District of Columbia, *see* Procedure for Establishing or Changing Gender Designation on a Driver License or Identification Card, DEP'T OF MOTOR VEHICLES, https://dmv.dc.gov/sites/default/files/dc/sites/dmv/publication/attachments/DC%20DMV%20Form%20Gender%20Self-Designation%20English.pdf (last visited May 30, 2025); Hawaii, *see* State of Hawaii Driver's License Application, DEP'T OF TRANSP., https://hidot.hawaii.gov/highways/files/2021/03/DL-Application-Form-Auto-VR-2023-03-15v1-fillable.pdf (last visited May 30, 2025); Illinois, *see* Gender Designation Change Form, OFFICE OF THE SEC'Y OF STATE, https://www.ilsos.gov/publications/pdf_publications/dsd_a329.pdf (last visited May 30, 2025); Maine, *see* Gender Designation Form, BUREAU OF MOTOR VEHICLES, https://www.maine.gov/sos/sites/maine.gov.sos/files/content/assets/GENDER-20DESIGNATION-20FORM.pdf (last visited May 30, 2025); Maryland, *see* Motor Vehicle Administration, *Changing Gender Designation*, DEP'T OF TRANSP., https://mva.maryland.gov/about-mva/Pages/changing-gender.aspx (last visited May 30, 2025); Massachusetts, *see* Driver's License, Learner's Permit, or ID Card Application, REGISTRY OF MOTOR VEHICLES, https://www.mass.gov/doc/license-and-id-application/download (last visited May 30, 2025); Michigan, *see* Michigan Secretary of State Sex Designation Form, SEC'Y OF STATE, https://www.michigan.gov/-/media/Project/Websites/sos/34lawens/MDOS_Sex_designation_form.pdf?rev=604b6da934c942eeb160e5ad699877f6 (last visited May 30, 2025); Minnesota, *see* Minnesota Driver's License/Instruction Permit/Identification Card Application, DEP'T OF PUB. SAFETY, https://s3.us-east-2.amazonaws.com/assets.dps.mn.gov/s3fs-public/PS33100-47%20JAN%202024.pdf (last visited May 30, 2025); Nevada, *see* Application for Driving Privileges or ID Card, DEP'T OF MOTOR VEHICLES, https://dmv.nv.gov/pdfforms/dmv002en.pdf (last visited May 30, 2025); New Hampshire, *see* Application for Driver License or Non-Driver ID Card, DEP'T OF SAFETY, https://www.dmv.nh.gov/sites/g/files/ehbemt416/files/inline-documents/dsmv450.pdf (last visited May 30, 2025); New Jersey, *see* Declaration of Gender Designation Change for New Jersey Motor Vehicle Commission Driver License or Non-Driver Identification Card, https://www.nj.gov/mvc/pdf/license/genderchange.pdf (last visited May 30, 2025); New Mexico, *see* Request for Sex Designation Change, TAX'N & REVENUE DEP'T, https://www.mvd.newmexico.gov/wp-content/uploads/2020/12/mvd10237.pdf (last visited May 30, 2025); New York, *see* Application for Permit, Driver License or Non-Driver ID Card, DEP'T OF MOTOR VEHICLES, https://dmv.ny.gov/forms/mv44.pdf (last visited May 30, 2025); Oregon, *see* Oregon Driver & Motor Vehicle Services, *Changing Your Gender Marker on Your Driver's License or ID Card*, OREGON.GOV, https://www.oregon.gov/ODOT/DMV/Pages/driverid/chg_gender_designation.aspx (last visited May 30, 2025); Pennsylvania, *see* Request for Gender Change on Driver's License/Identification Card, DEP'T OF TRANSP., https://www.dot.state.pa.us/public/dvspubsforms/BDL/BDL%20Form/DL-32.pdf (last visited May 30, 2025); Rhode Island, *see* Div. of Motor Vehicles, License/ID/Permit Application (LI-1 Form), DEP'T OF REVENUE, https://dmv.ri.gov/licenses-permits-ids/drivers-licenses/name-address-change (last visited May 30, 2025); Utah, *see* Driver License Division, Apply, DEP'T OF PUB. SAFETY,

permitted on U.S. passports since 2021, and recent attempts to reverse that policy were enjoined by a federal court on an emergency basis. *Orr*, 2025 WL 1145271, at *2, *25. Even in the absence of specific statutory language regarding nonbinary individuals, courts have interpreted statutes as implying the existence and rights of nonbinary people. *Matter of Hollister*, 305 Or. App. 368, 372 (Or. App. Ct. 2020) (ordering state government to process an individual's legal sex change from female to nonbinary, based on a textual interpretation of an Oregon statute which did not include the term nonbinary but did include the term "gender identity," because it is "well understood" that the term "nonbinary" encompasses the "gender identity" of those "who identif[y] as neither entirely male nor entirely female"). Defendants' argument that "creating a new gender category . . . without legislative approval undermines the separation of powers" therefore fails, both because the gender category of nonbinary is not new, and because ruling on the constitutionality of state action is the responsibility of this Court.

Defendants next argue that the Puerto Rican government "has an interest in maintaining the integrity of public records." (**ECF 52 at 22**). In this, the Court agrees. But it is uncontested that an existing scheme is already in place to protect the integrity of vital records in circumstances where a birth certificate has been amended. Since 1931, Puerto Rico law has provided that in the case of adoptions, an amended birth certificate may be issued bearing the names of the adoptive parents "[p]rovided, that the original

---

https://dldapply.ps.utah.gov/?appt=id-card#apply (last visited May 30, 2005); Vermont, *see* Application for License/Permit, Dep't of Motor Vehicles, https://dmv.vermont.gov/sites/dmv/files/documents/VL-021-License_Application.pdf (last visited May 30, 2005); Virginia, *see* Driver's License and Identification Card Application, DEP'T OF MOTOR VEHICLES, https://www.dmv.virginia.gov/sites/default/files/forms/dl1p.pdf (last visited May 30, 2025); and Washington, *see* Change of Gender Designation, Dep't of Licensing, https://dol.wa.gov/forms/view/520043/download?inline (last visited May 30, 2025). *See also, generally,* Movement Advancement Project, *Identity Document Laws and Policies*, http://www.lgbtmap.org/equality-maps/identity_document_laws (last visited May 30, 2025).

birth certificate of the adoptee, the judgment of the court, and other documents shall be kept in the Registry in a sealed envelope and shall be confidential documents." 24 L.P.R.A. § 1136 (official translation). Following the *Arroyo* decision in 2018, the Demographic Registry is required to utilize this same process for preserving original birth certificates when the gender marker has been amended. *Arroyo*, 305 F. Supp. 3d at 335; *see also* 31 L.P.R.A. § 7655 (prohibiting alterations to original birth certificates).

Thus, while Puerto Rico may have a legitimate state interest in maintaining accurate records of its citizens' sex at birth, Defendants have failed to articulate why this particular interest is furthered by treating nonbinary individuals differently than binary individuals. This exact issue was recently discussed and decided by the Tenth Circuit in *Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024). Prior to 2021, Oklahoma permitted its citizens to amend the gender marker on their birth certificates, including to a nonbinary designation. *Id.* at 777. In April 2022, the then-Governor of Oklahoma signed a law prohibiting the use of "any symbol representing a nonbinary designation including but not limited to the letter 'X'" on a birth certificate. *Id.* The plaintiffs in that case brought suit to challenge the constitutionality of the new law. In that case, as here, the defendants argued that the challenged policy was necessary to support the state's interest in "the accuracy of its own vital statistics recording facts about birth." *Id.* at 795. Yet the *Fowler* Court found that this interest, though legitimate, was not rationally related to the challenged policy because "Plaintiffs want amended birth certificates for their own use—they are not trying to prevent Oklahoma from keeping and then later accessing *original* birth certificates." *Id.* (emphasis added). The court went so far as to call the state's purported interest a "non sequitur." *Id.* Because Oklahoma already had a protocol for retaining original birth certificates after they were amended for adoption purposes, the

court found the policy was not rationally related to the defendants' asserted interest in preserving the accuracy of vital statistics. *Id.* (citing 63 Okl. St. Ann. § 1-316, the Oklahoma statute which provides that in the case of adoptions, amended birth certificates may be issued but the original birth certificate "shall not be amended").

Such is the case here. It is not disputed that Puerto Rico has a legitimate interest in recording facts about its citizens at birth and maintaining accurate vital records. But here, as in *Fowler*, the Commonwealth already has existing processes in place to retain original birth certificates in cases where a birth certificate has been subsequently amended. Plaintiffs do not seek to alter or eliminate these processes, nor do they seek to prevent the Commonwealth from recording and thereafter storing vital statistics. Quite the opposite: Plaintiffs here, as in *Fowler*, "merely want amended birth certificates for their own use that do not require any changes to the original records kept by the state." *Fowler*, 104 F.4th at 795. Defendants' argument regarding the maintenance of records is, as in *Fowler*, a "non sequitur." *Id.*

Because the Court cannot conceive of any rational basis for the Policy's current distinction between binary and nonbinary individuals, we are forced to make "the inevitable inference that the [classification] is born of animosity toward the class of persons affected." *Romer,* 517 U.S. at 634. Yet, as explained above, the entire purpose of the rational basis framework is to separate classifications based on *legitimate* state interests from those based on disapproval of or "irrational prejudice" against a non-suspect class. *City of Cleburne*, 473 U.S. at 440; *see also Romer*, 517 U.S. at 632–33 ("The search for the link between classification and objective gives substance to the Equal Protection Clause."). The rational basis framework was developed to ensure that when a government policy draws a classification, it does so for a reason other than "the purpose

of disadvantaging the group burden by the law." *Romer*, 517 U.S. at 632–33. Simply put, "[m]oral disapproval of [a] group, like a bare desire to harm the group, is an interest that is insufficient to satisfy rational basis review under the Equal Protection Clause." *Lawrence v. Texas*, 539 U.S. at 582 (citing *U.S. Dep't of Agric. v. Moreno*, 413 U.S. at 534; *Romer*, 517 U.S. at 634–35).

## V. Conclusion

Puerto Rico's current Birth Certificate Policy is not supported by a rational basis, and therefore violates the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs' Motion for Summary Judgment is therefore **GRANTED** and Defendants' Cross Motion for Summary Judgment is **DENIED**. Defendants are hereby **ORDERED** to promptly amend their Application for Gender Change form to include an option to select an "X" as one's gender marker on their birth certificate. Plaintiffs' request for a Writ of Mandamus is **DENIED**; Plaintiffs shall wait for the new application form to become available and shall follow the process established therein.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of May, 2025.

**/s/ María Antongiorgi-Jordán**
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**