IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ÍNARU NADIA DE LA FUENTE DÍAZ, *et al.*<br><br>Plaintiffs<br><br>v.<br><br>JENNIFFER GONZÁLEZ COLÓN, *et al.*<br><br>Defendants | Civil No. 23-1544 (MAJ) |

**MOTION FOR RECONSIDERATION PURSUANT TO RULE 59(E) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**TO THE HONORABLE COURT:**

 **COME NOW** Defendants Hon. Jenniffer González Colón, in her official capacity as Governor of the Commonwealth of Puerto Rico; Dr. Victor Ramos Otero López, in his official capacity as Secretary of the Department of Health of the Commonwealth of Puerto Rico; and Wanda Llovet Díaz, in her official capacity as the Director of the Demographic Registry and Vital Statistics of the Commonwealth of Puerto Rico ("Defendants"), and very respectfully STATE and PRAY as follows:

### I. INTRODUCTION

 As a threshold matter, Defendants respectfully assert that the Court's *Opinion and Order* misapplies the standard of rational review and incorrectly places the burden of defending the birth certificate format on the Defendants instead of the Plaintiffs. Moreover, in so doing, the Court misconstrues the record and attributes concessions to the Defendants that are unsupported by the record. Had the Court correctly applied the rational review standard; it would have immediately

1

ascertained that the Plaintiffs unquestionably failed to carry their burden of negating every conceivable basis that might support the rationality of the birth certificate format. In any event, if —for the sake of argument only— the Court understands that Plaintiffs did in fact carry their burden of demonstrating that the birth certificate format is unsupported by any rational explanation, the undisputed record before the Court clearly demonstrates that the Government of Puerto Rico ("Government") has easily met the rational review standard under the Equal Protection Clause. Under this standard, a statutory classification will be upheld so long as there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993). Where a plausible reason exists for government action, the Court's inquiry ends. Id. Here, issuing birth certificates with "Male" or "Female" markers is supported by plausible and legitimate state interests and thus must be sustained under rational basis review. This is so because the Department of Health's birth certificate format is protecting legitimate governmental interests that include preserving legislative authority and ensuring the consistency, accuracy and transferability of public records.

Further, as a corollary to the above, it bears mentioning that the rational basis inquiry "employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one." U.S. v. Skrmetti, 605 U.S. __ (2025) (quoting Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314 (1976)). However, Defendants respectfully sustain that the Court's *Opinion and Order*, in exercising its unquestioned prerogative of judicial review, ignores a growing judicial trend —led by the Supreme Court of the United States itself— of leaving sensitive matters of policy up to the states and their respective legislative processes. See, Dobbs v. Jackson Women's Health Organization, 597 U.S. 215, 274 (2022) (highlighting that courts must explain when they depart

from the "normal rule that courts defer to the judgments of legislatures in areas fraught with medical and scientific uncertainties") (internal citations and quotations omitted). Thus, for the reasons further explained below, Defendants respectfully request this Court to reconsider its ruling and ultimately dismiss the *Second Amended Complaint*.

## II. PROCEDURAL BACKGROUND

On November 15, 2023, Plaintiffs filed a *Second Amended Complaint* challenging the Government's issuance of birth certificates (Docket No. 12, pp. 13-19). To wit, Plaintiffs claim that the Government's failure to add a third gender marker for nonbinary individuals prevents persons who do not identify as either male or female from displaying their true gender identity be it through a designation of "X", or any other nonbinary signifier on their birth certificates. In so doing, Plaintiffs posit, Defendants violate their rights under the Fourteenth Amendment's Equal Protection and Due Process Clauses, as well as their First Amendment's right to free speech. Id.

On September 6, 2024, Plaintiffs moved for *Summary Judgment*, arguing that the Puerto Rico Department of Health's ("Department of Health") binary-only birth certificates violate the Fourteenth and First Amendments. (Docket No. 36). With respect to the Equal Protection Clause, Plaintiffs argued that the said birth certificate format constitutes sex-based discrimination and therefore warrants a heightened scrutiny. Id. at 16. In the alternative, they contend that even under a rational basis review, the Department of Health's asserted interests—such as maintaining the integrity of vital records—fail to meet constitutional standards and are grounded in impermissible animus. Id. at 13-17. They further argue that the Department of Health's justifications had already been rejected in Arroyo González v. Rosselló Nevares, 305 F. Supp. 3d 327 (D.P.R. 2018). Id. at 9-10.

On January 10, 2025, Defendants filed their *Opposition to Plaintiffs' Motion for Summary Judgment and Cross Motion for Summary Judgment*. (Docket No. 52). Defendants argued that the Government does not discriminate against nonbinary individuals because all government-issued identification documents in Puerto Rico, including birth certificates, adhere to binary gender classifications under male or female designations. Nevertheless, even assuming *arguendo* that the birth certificate format treats nonbinary individuals differently, Defendants maintained that it survives rational basis review. Defendants posited that the Department of Health's birth certificates format is supported by legitimate state interests, including preserving the legislative integrity and authority granted to the Commonwealth, maintaining consistency and integrity in vital records, and ensuring the reliability of historical data. Id. at 16-24. As such, they argued that issuing birth certificates with binary sex markers exclusively is rationally related to these governmental interests. Plaintiffs did not file an Opposition to Defendants' *Cross Motion for Summary Judgment*.

On May 30, 2025, this Court issued an *Opinion and Order* granting Plaintiffs' *Motion for Summary Judgment* and denying Defendants' *Cross Motion for Summary Judgment.* (Docket No. 59). In finding that summary judgment was appropriate under the Equal Protection Clause of the Fourteenth Amendment, the Court declined to address the remaining constitutional claims. (Docket No. 59 at 6, n.7). The Court held that the Government could not discern a rational basis for distinguishing between binary and nonbinary individuals in the context of gender markers. Consequently, it ordered the Department of Health to amend its Application for Gender Change form to include an "X" gender marker option on their birth certificate. (Docket No. 59). On June 2, 2025, the Court entered *Judgment* "dismissing" the case with prejudice in its entirety without the imposition of costs or attorneys' fees. (Docket No. 60).

### III. RECONSIDERATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(e)

A motion for reconsideration is considered under Fed. R. Civ. P. 59 or Rule 60, depending on the time such motion is served. Generally, pursuant to motions for reconsideration under Fed. R. Civ. P. 59(e), "the moving party must "either establish a manifest error of law or must present newly discovered evidence."" Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005) (quoting Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 146 n.2 (1st Cir. 2004)).

A motion for reconsideration "does not provide a vehicle for a party to undo its own procedural failures and it certainly does not allow a party to introduce new evidence or advance arguments that could or should have been presented to the district court prior to the judgment." Marks 3-Zet-Ernst Marks GmBh & Co. KG v. Presstek, Inc., 455 F.3d 7, 15-16 (1st Cir. 2006). Notwithstanding, any motion seeking the reconsideration of judgment or order is considered a motion to alter or amend judgment under Fed. R. Civ. P. 59 (e) if it seeks to change the order or judgment issued. Hatfield v. Board of Country Comm'rs for Converse County, 52 F.3d 858, 861 (10th Cir. 1995). A motion under Rule 59(e) is not a mechanism to rehash old arguments that have already been rejected by the court or raise new legal theories that should have been raised earlier. Nat'l Metal Finishing Co. v. Barclays American/Commercial, Inc., 899 F.2d 119, 122 (1st Cir. 1990).

On this basis, Defendants respectfully request this Honorable Court to reconsider its *Opinion and Order* at Docket No. 59 holding that the Department of Health's Birth Certificate Policy did not meet the rational basis standard under the Equal Protection Clause due to a manifest error of law, as will be argued herein.

## IV.    ANALYSIS[1]

### A. Plaintiffs have not met their burden under the Equal Protection Clause's Rational Standard.

The Equal Protection Clause provides that "[n]o state shall…deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV §1. The provision does not by itself create substantive rights and does not forbid States from drawing distinctions in their laws. Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). It is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr. 473 U.S. 432 (1985).

If a statute treats similarly situated persons equally (e.g., no classifications between classes of individuals is made) then generally Equal Protection Clause principles are not implicated. Accordingly, analysis of whether a law violates the Equal Protection Clause begins in identifying "the classification that it draws." Coalition for Economic Equity v. Wilson, 122 F.3d 692, 702 (9th Cir. 1997). But, even when a statute indeed creates distinct classes, such an action is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. FCC v. Beach Commc'ns, Inc., 508 U.S. at 313.

To that point, as a general rule, legislation is presumed to be valid and will be sustained if a classification drawn by the challenged statute is rationally related to a legitimate state interest. City of Cleburne, 473 U.S. at 440. A rational basis review under the Equal Protection Clause is guided by the principle that the courts do not have "a license…to judge the wisdom, fairness, or

---

[1] For the sake of brevity, this motion will focus on the Court's ruling that Defendants' Equal Protection Clause rights in light of the fact that the Court declined to rule on the issue of whether the Department of Health's birth certificate policy: (a) was sex-based discrimination, and (b) the policy infringes on Plaintiffs First Amendment and substantive due process rights. (Docket No. 59). However, nothing in this motion should be construed as a waiver or concession of the argument that Defendants have not discriminated against Plaintiffs on the basis of sex nor infringed on their First Amendment or substantive due process rights.

logic of legislative choices." Heller v. Doe, 509 U.S. 312, 319 (1993) (quoting FCC v. Beach Commc'ns, Inc., 508 U.S. at 313. Where "social or economic legislation is at issue, the Equal Protection Clause allows the statewide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." City of Cleburne, 473 U.S. at 440. In this context, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is a reasonably conceivable state of facts that could provide a rational basis for the classification. FCC v. Beach Communications, Inc, 508 U.S. at 313.

In light of this deferential standard, the government "has no obligation to produce evidence to sustain the rationality of a statutory classification." Heller, 509 U.S. at 320. Instead, the "burden is on the one attacking the legislative arrangement to [negate] every conceivable basis which might support it…" Id.  Unless the plaintiff makes such a showing, courts need not examine what "such reasonably conceivable state of facts may be" because a government's duty to defend it is legislative action is only activated when a plaintiff carries said burden in cases that implicate social and economic policies that do not infringe on fundamental constitutional rights. Mulero-Carrillo v. Román Hernández, 790 F.3d 99, 108 (1st Cir. 2015). It follows then that "[a] statutory discrimination will not be set aside if any state of facts reasonably made may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420 (1961). Further, courts must accept as constitutional those legislative classifications that bear a rational relationship to a legitimate government interest. As such, a strong presumption of validity exists and therefore, any reasonably conceivable state of facts will do. Heller, at 509 U.S. at 319-20.

Amongst this backdrop, from the outset, Defendants respectfully note that the Court's *Opinion and Order* commences its analysis from a flawed premise. Specifically, the Court stated

7

that a classification was "apparent" from the face of the Application for Gender Change Form and goes as far as to incorrectly stating that "Defendants concede that the Birth Certificate Policy creates a classification. . . ." (Docket No. 59, p. 10). However, as Defendants extensively put forth in their unopposed *Cross Motion for Summary Judgment,* the format treats all individuals equally because it allows all transgender individuals to switch the gender on their birth certificate to that which better comports with their gender be it "Male" to "Female." Solely because the legislative assembly of Puerto Rico only envisioned gender changes rooted in the biological sexes of male and female does not lead to the conclusion that it creates a distinction between nonbinary transgender individuals and binary transgender individuals. As such, the Court erred in so hastily finding that a classification was in fact created by the Department of Health biologically based birth certificate format.

This is particularly the case given that Defendants never conceded that said format in fact creates a classification between similarly situated individuals. On the contrary, as Defendants repeatedly asserted in their cross motion: "[the Department of Health] treat[s] all citizens alike by issuing a birth certificate with a male or female sex designation. As such, it does not deny benefits stemming from a basic right protected by equal protection or substantive due process." (Docket No. 52, p. 19). Thus, as can be gleamed from this and many other similar excerpts from the *Cross Motion for Summary Judgment*, Defendants never conceded that the birth certificate policy creates a classification. Moreover, Defendants reiterate that the Government's action is neutral and does not confer or deny benefits or compel any individual to act.  Based on this, it does not implicate fundamental rights under Equal Protection or Substantive Due Process. Pavan v. Smith, 582 U.S. 563, 566-67 (2017).

Still, even assuming *arguendo* that Puerto Rico's birth certificate policy did create such a classification, in properly applying the standard for rational review, it was the Plaintiffs who had the obligation to refute "every conceivable basis" that might support it. Heller, 509 U.S. at 320. However, the Court's *Opinion and Order* makes no finding that Plaintiffs did in fact carry that burden. On the contrary, once the Court concluded that the birth certificate format created a classification against nonbinary individuals, it immediately proceeded to discuss Defendants' purported failure to put forth a legitimate interest that would rationally explain the Government's failure to create a separate category for nonbinary individuals on their birth certificates. (Docket No. 59, p. 12-19). But, Defendants respectfully contend that such reasoning could only be entertained if the Court expressly found that Plaintiffs had made a showing that no conceivable basis supported the birth certificate format. Yet, other than the conclusory proposition that the "only reason to make a distinction between binary and nonbinary trans people is an improper animus" Plaintiffs put forth no reasoning that would put the Court in position to scrutinize the Government's rationale behind the current birth certificate format.[2] (Docket No. 36, p. 14-15). As a result of Plaintiffs' unquestionable failure to carry the heavy burden of mustering a challenge that would survive rational scrutiny, their *Motion for Summary Judgment* must be denied and the complaint dismissed without the need to delve into what the Government's explanation behind its policy would be.

---

[2] As the record shows, Plaintiffs did not oppose Defendants' *Cross Motion for Summary Judgment* and its *Additional Statement of Uncontested Material Facts*. (Docket No. 52-3). Since Plaintiffs did not controvert Defendants' *Additional Statement of Uncontested Material Facts*, they shall be deemed admitted pursuant to Local Rule 56 (e).

> **B. The Department of Health's Birth Certificate Policy and Practice of issuing birth certificates with "Male" or "Female" sex markers and not including a third nonbinary gender is related to legitimate state interests.**

In any event, as extensively argued in the Defendants' unopposed *Cross Motion for Summary Judgment*, the Department of Health meets and exceeds the rationality standard under the Equal Protection Clause and, therefore, the Government's birth certificate policy must be sustained. In that sense, the crux of the District Court's equal protection analysis was its finding that the Department of Health must include an "X" gender marker on birth certificates because that decision fails rational basis review. The Court reached this conclusion primarily because the Department of Health retains the original birth certificate after issuing an amended one, suggesting that preserving historical records is not undermined by the inclusions of an "X" designation. (Docket No. 59 at p. 17-18). Defendants respectfully assert, however, that the Commonwealth and its Department of Health presented ample legitimate justifications for issuing birth certificates solely with "Male" or "Female" gender markers, thereby satisfying the rational basis standard. Further, Defendants posit the Court overstepped the rational basis standard of review because when a court understands that a policy is rationally related to a legitimate interest, it is a question for the legislatures not the courts to determinate how to better serve that interest.

In its *Opinion and Order*, the Court concluded that the birth certificate format creates an impermissible classification between binary and nonbinary individuals and therefore violates the Equal Protection Clause (Docket No 59, p. 6). The Court found that the Gender Change Application Form provides options only for individuals identifying within the binary framework, excluding nonbinary applicants. Id. at 10. While the Court acknowledged that the Commonwealth has a legitimate interest in the integrity of public records, it ruled that this interest failed rational

10

basis review due to existing procedures allowing for the amendment and retention of original certificates. Id. at p. 16-17.

Defendants respectfully submit that the Court erred in concluding that the Government did not show a rational basis for its birth certificate policy. Under well-established precedent, the rational basis test requires the Court to uphold a classification if any reasonably conceivable set of facts could provide a rational basis for the classification. FCC v. Beach Commc'ns, Inc., 508 U.S. at 313. Legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. City of Cleburne, 473 U.S. at 440; Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 (1911) ("A classification having some reasonable basis does not offend against the [Equal Protection Clause] merely because it is not made with mathematical nicety or because in practice it results in some inequality").

Along that line, although the Court cited authority from other jurisdictions recognizing gender identity-based discrimination as sex discrimination, it ultimately declined to determine the applicable level of scrutiny and instead found that the policy failed even under rational basis review. (Docket No. 59, p. 11-12). However, rational basis review is "very deferential", Newark Cab Ass'n v. City of Newark, 901 F.3d 146, 156 (3rd Cir. 2018), and "a paradigm of judicial restraint." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. at 313. Defendants assert that under the narrow rational review, the Commonwealth's interest is rationally related to its action. Jones v. Governor of Fl., 975 F.3d 1016, 1035 (11th Cir. 2020) (explaining that a state is not required "to draw the perfect line [or] even to draw a line superior to some other line it might have drawn" because the Constitution requires "only a 'rational line'").

Here, there is a rational basis for a policy that prevents the Government from adding markers in a birth certificate other than those matching the biological sex. Moreover, ample

11

legitimate explanations support the Department of Health's birth certificate format. And, under a rational basis, a state policy should stand even if it "is significantly over-inclusive or under-inclusive." Williams v. Pryor, 240 F.3d 944, 948 (11th Cir. 2001).

*First*, *preservation of historical accuracy*. In its *Opinion and Order*, the Court agreed that the Commonwealth has a legitimate state interest in maintaining the integrity of public records but dismissed such reason as a rational basis because an existing scheme exists in cases where a birth certificate has been amended. (Docket No. 59 at p. 16-17). The Sixth Circuit, however, has recognized that the Department of Health has a legitimate interest in maintaining a consistent, historical record, the discretion of defining the terms used in their own laws as well as deciding what records to keep. Gore v. Lee, 107 F.4th 548, 561 (2024). Therefore, the Department of Health abides by the Puerto Rico Civil Code, in limiting itself to "Male" and "Female" gender markers exclusively on the birth certificates it issues. Whether the court finds a policy imprudent, ineffective or imperfect does not mean it is irrational for constitutional purposes. Id.

*Second*, *reliability of legal documents*. The Government has a legitimate interest in maintaining a consistent and historical definition of sex in its birth certificates and has considerable discretion in defining the terms used in their own laws as well as deciding what records to keep. Gore at 560. Birth certificates serve vital functions as foundational legal documents and maintaining biologically based classifications ensure their reliability and historical accuracy. See, Tuan Anh Nguyen v. INS, 533 U.S. 53, 73 (2001) (respecting this "most basic biological difference []" avoids the risk of "making the guarantee of equal protection superficial"); Pavan, 582 U.S. at 568 (Gorsuch, J. dissenting) (noting that "rational reasons exist for a biology based birth registration scheme…line ensuring government officials can identify public health trends and helping individuals determine their biological lineage, citizenship, or susceptibility to genetic

12

disorders"); Kasper v. School Board of St. Johns County, 57 F.4th 791, 803 n. 6 (2022) (noting that "biological sex…is the driving force behind the Supreme Court's sex-discrimination jurisprudence").

*Third*, *Government Speech Doctrine*. The content of a birth certificate constitutes government speech. The Commonwealth has discretion to determine the messages conveyed in official records. Therefore, an amended birth certificate, even if it is for an individual's own use, is still government speech, regardless of whether the State has system in place that preserves the original birth certificate. The government's interest in the accuracy of its speech meets the rational standard. Deciding what information goes on a birth certificate, and whether to include an "X" gender marker, "is a matter of public policy to be decided by" the Government of Puerto Rico, not by Plaintiffs or a court. K. v. Health Div., Dep't of Hum. Res. 560 P.2d 1070, 1072 (Ore. 1977).

*Fourth*, *fraud prevention and administrative uniformity*. Defendants also have a legitimate state interest in safeguarding the accuracy of documents used to determine benefit eligibility and prevent fraud. Hartin v. Dir. Of Bureau of Recs. & Stat., 347 N.Y.S. 2d 515, 518 (N.Y. Sup. Ct. 1973) (holding that the "public interest for protection against fraud" outweighs the "desire of concealment of a change of sex"). The Commonwealth of Puerto Rico models its policy and practice after the Puerto Rico Civil Code and the Vital Registry's Act which, as amply discussed in *Defendant's Cross Motion for Summary Judgment* only recognizes "Male" and "Female" designations. (Docket No. 52 at p. 10-16). Corbitt v. Secretary of the Alabama Law Enforcement Agency, 115 F. 4th 1335, 1349 (11th Cir. 2024) ("Modeling a policy after a preexisting statute is rationally related to accomplishing Alabama's goal of developing and maintaining a uniform legal scheme and consistent policies and procedures.").

*Fifth, transferability and marketability of public records*. As the Court itself discussed in its *Opinion and Order*, around seventeen states allow their citizens to include a gender-neutral sex or gender marker on their birth certificates. However, the inclusion of a nonbinary identity in vital records has been the product of legislative action as it still a hotly debated item in the policy realm. As such, were the Government to amend its procedures to include a third gender category that is only accepted by a minority of states in the union as of this writing, such an action could burden the transferability and undermine the trustworthiness of the Government's official documents and records when its citizens seek to move to or do business in jurisdictions that do not recognize gender expressions other than male or female.

As stated previously, Defendants assert that Plaintiffs failed to meet their burden of rebutting all conceivable justifications for the challenged policy. Plaintiffs' argument is limited to stating that Defendants arguments were already discarded by Judge Cerezo in Arroyo González (Docket No. 36 at 12-13);[3] and that the Demographic Registry already retains the original birth certificate when issuing an amended one, rendering the historical record intact. Id. This does not negate the broad array of legitimate interests supporting the policy, nor does it undermine the presumption of constitutionality that applies under rational basis review. Defendants' interest in maintaining the accuracy of its vital records complies and broadly surpasses the rational standard under the Equal Protection Clause.

Moreover still, the Government and its Department of Health have shown its legitimate state interest in maintaining accurate vital records pursuant to its birth certificate policy. As amply

---

[3] It bears mentioning that to the extent Plaintiffs —and the Court for that matter— look towards Arroyo-González for guidance they tread on uncertain judicial grounds. On the one hand, it is problematic to extrapolate the Arroyo-Gonzalez ruling here because that was not an Equal Protection case. Rather, it was a case premised on the right to privacy. More importantly, recent Supreme Court precedent has greatly curtailed the traditional federal right to privacy. See, Dobbs, 597 U.S. at 300 (Abortion laws to be reviewed under rational scrutiny for courts must respect a legislatures judgment "even when laws at issue concern matters of great social significance and moral substance.")

discussed in Defendants unopposed *Opposition to Summary Judgment and Cross Motion for Summary Judgment*, the Department of Health has reasonably supported its policy. The rational basis inquiry "employs relatively relaxed standard of deflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one." U.S. v. Skrmetti, 605 U.S. ___ (2025) (quoting Massachusetts Bd, of Retirement v. Murgia, 427 U.S. 307, 314 (1976)). Under this standard, the Court must uphold a statutory classification so long as there is "any reasonably conceivable state of facts that would provide a rational basis for the classification." FCC v. Beach Communications, Inc., 508 U.S. at 313. Where there exist "plausible reasons" for the relevant government action, the Court's inquiry is at an end. Id. at 313-314. Rational basis review is critical to safeguarding the state's legitimate interests. Under this level of review, courts ask only whether a law is "rationally related to a legitimate governmental interest." Department of Agriculture v. Moreno, 413 U.S. 528 (1973).

Finally, even when Plaintiffs failed to meet their burden of negating every conceivable basis in favor of the birth certificate format, the Court did not afford the strong presumption of validity owed to the Government's policy. Whether the court finds a policy imprudent, ineffective or imperfect does not mean it is irrational. Gore 107 F. 4th at 561. The Department of Health's consistent issuance of birth certificates stating "Male" or "Female" applies equally to all applicants and rationally advances the Government's interest in consistency, administrative coherence, transferability and historical integrity of public records.

### C. The Department of Health's Birth Certificate Policy meets a rational standard, and any changes should be left to the Commonwealth's elected representatives.

The rational basis inquiry "employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one." Massachussets Bd. of Retirement, U.S. at 314. Under this standard, the court

15

must hold a statutory classification so long as there is "any reasonably conceivable state of facts that could provide a rational basis for the classification. FCC v. Beach Communication, Inc., 508 U.S. at 313. Where there exist "plausible reasons" for the relevant government action, the Court's inquiry is at an end. U.S. v. Skrmetti, 605 U.S. __ (2025).

In its *Opinion and Order*, the Court dismissed Defendants' argument that the Department of Health cannot legislate out of whole cloth the official governmental recognition of a gender category such as "X" without legislative approval since it undermines the separation of powers, stating that such a position was misplaced. (Docket No. 59 at p. 13). However, Defendants respectfully submit that this position is both constitutionally and administratively grounded. As previously explained, expanding gender classifications on official records is appropriately reserved for legislative action—not unilateral administrative change.

The Supreme Court has consistently held that states are afforded "wide discretion to pass legislation in areas where there is medical and scientific uncertainty." Id. In areas of economics social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. Dandridge v. Williams, 397 U.S. 471, 485 (1970).

Birth certificates are not merely personal identifiers; they serve as foundational public documents providing essential data for government officials, including information on population trends, fertility rates, and public health metrics. The Vital Statistics Registry Act creates a General Demographic Registry within the Department of Health to register, collect, guard, preserve and certify vital facts of the people born in Puerto Rico P.R. Law. Ann. tit. 24 § 1042 (1). It is the formal and credible statistical registry that allows the study of vital statistics of our population. This registry is the official source for vital demographic data and serves as *prima facie* evidence of the facts recorded therein. Ex Parte Delgado-Hernández, 165 D.P.R. 170, 187 (2005).

This case implicates a broader debate about the extent to which individuals may compel state agencies to alter foundational documents based on subjective self-identification. As the Court noted, at least seventeen other states allow the gender marker on birth certificates to be amended to include a nonbinary gender identity. (Docket No. 59 at p. 15). However, such changes have followed the democratic process and implemented their changes through policymaking—not by judicial mandate. The Equal Protection Clause does not resolve these public policy disagreements, nor does it empower courts to substitute their judgment for that of elected officials. The Court's role is not to judge the wisdom, fairness, or logic" of the Government's birth certificate format, FCC v. Beach Communications, Inc, 508 U.S. at 313. In so recognizing, the Supreme Court in Dobbs clarified that rights that have no basis in the "Constitution's text or in our Nation's history" are not fundamental rights that would trigger heightened scrutiny. Dobbs, 597 U.S. at 300. This is so because courts, faced with health and welfare policy, should not substitute their social and economic beliefs for those of the legislative process even "when the laws at issue concern matters of great social significance and moral substance." Id.

In sum, while Defendants do not contest the Court's faculty to exercise judicial review of the Government's laws and policies, such is a power that it must brandish with caution and a great degree of deference to the democratic process in cases that do not implicate fundamental rights. From the Supreme Court's recent pronouncements, Plaintiffs would be hard pressed to put forth a contention that forcing the government to include a third gender category —unrecognized by a majority of states and countries' official documents— on the Government's birth certificates is a fundamental right protected by the Constitution. See, Dobbs, 597 U.S. at 300 (abortion not a fundamental constitutional right, thus the courts must defer to the democratic process); U.S. v. Skrmetti, 605 U.S. ___ (2025) (banning of gender dysphoria treatment for minors survives rational

review). As it follows, the questions regarding the Government's birth certificate policy must be left to the people, their elected representatives and the democratic process. The Court is not here to second guess the State's line-drawing, evaluate the efficacy of the State's policy or rewrite the policy based on its own sense of fairness. Corbitt v. Secretary of the Alabama Law Enforcement Agency, 115 F 4th 1335 (11th Cir. 2024).

Accordingly, while Defendants stress that Plaintiffs have not—and cannot—negate every conceivable justification supporting the Department's line-drawing. Id ("We must uphold the classification unless [the plaintiffs] negat[e] every conceivable basis which might support it."). Yet, contrary to the correct application of this standard, the Court never required Plaintiffs to meet such a standard and immediately turned its inquiry towards the Government's explanation. Regardless, even if the Court where to find that they have met their burden under the deferential standard of rational review under the Equal Protection Clause, the Government's has exceeded the threshold.

## V. CONCLUSION

Defendants assert that no case or controversy exists as to the constitutionality of the Department of Health's birth certificate format and, therefore, Summary Judgment should be granted in their favor of Defendants. The Government's decision to require legislative authorization before recognizing an "X" gender marker designation on birth certificates is constitutionally sound and firmly grounded in principles of administrative law and separation of powers.

Because the Plaintiffs have not met their required burden and the Department of Health's Policy is presumed to be valid and bears a rational relationship to a legitimate governmental interest, it must be upheld under the Equal Protection Clause. To conclude otherwise would

contravene deeply rooted constitutional traditions that entrust the resolution of complex social and policy questions to the democratic process—not the courts. See Skrmetti, 605 U.S. ___ (2025).

**WHEREFORE**, defendants respectfully request the court to reconsider its *Opinion and Order* (Docket No. 59) and, pursuant to the arguments stated herein, conclude that the Department of Health's birth certificate format does not violate the Equal Protection Clause since it is amply supported by legitimate state interests and, consequently, dismiss the *Second Amended Complaint* with prejudice.

**WE HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of this filing to all attorneys on record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico on the 27th day of June 2025.

| | |
|---|---|
| **LOURDES L. GÓMEZ TORRES**<br>Secretary of Justice<br><br>**ANTONIO M. CINTRÓN ALMODÓVAR**<br>Deputy Secretary of Civil Litigation<br><br>**SUSANA I. PEÑAGARÍCANO BROWN**<br>Director of Federal Litigation and<br>Bankruptcy Division | *S/ Diana I. Pérez-Carlo*<br>**DIANA I. PÉREZ-CARLO**<br>USDC No. 307313<br>Email: *diana.perez@justicia.pr.gov*<br>Tel. (787) 721-2900, ext. 1419<br><br>**DEPARTMENT OF JUSTICE**<br>**OF PUERTO RICO**<br>Federal Litigation and Bankruptcy Division<br>PO Box 9020192<br>San Juan Puerto Rico, 00902-0192 |