IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ÍNARU NADIA DE LA FUENTE DÍAZ, *et al.* <br><br> Plaintiffs <br><br> v. <br><br> JENNIFFER GONZÁLEZ COLÓN, *et al.* <br><br> Defendants | CIVIL No. 23-1544 (MAJ) <br><br> RE: DECLARATORY AND INJUNCTIVE RELIEF |

**MOTION TO STAY PROCEEDINGS PENDING APPEAL**

**TO THE HONORABLE COURT:**

**COME NOW** Defendants Hon. Jenniffer González Colón, in her official capacity as Governor of the Commonwealth of Puerto Rico; Dr. Victor Ramos Otero López, in his official capacity as Secretary of the Department of Health of the Commonwealth of Puerto Rico; and Wanda Llovet Díaz, in her official capacity as the Director of the Demographic Registry and Vital Statistics of the Commonwealth of Puerto Rico (collectively "Defendants"), and respectfully move for a stay pending appeal pursuant to Fed. R. App. P. 8(a)(1)(A), and **STATE** and **PRAY** as follows:

I.     **INTRODUCTION**

On May 30, 2025, the Court entered an *Opinion and Order* granting Plaintiffs' *Motion for Summary Judgment* (Docket No. 59) and issued a corresponding *Judgment* (Docket No. 60) on June 2, 2025. In sum, the Court ordered Defendants to amend Puerto Rico's Application for Gender Change form to include an "X" gender marker on their birth certificate, finding that the Puerto Rico's current binary birth certificate format failed rational basis review under the Equal Protection Clause. (Docket 59 at 19). After several procedural events, including the Court's

denial of a post-judgment motion for reconsideration filed by Defendants, on July 1, 2025, Plaintiffs filed a *Motion for Enforcement of Judgment* requesting the Court order Defendants to amend Puerto Rico's birth certificate format and procedures in accordance with the Court's *Opinion and Order* within a period "not [to] exceed another month." (Docket No. 63). That same day, Defendants filed a *Notice of Appeal* (Docket No. 64) from both the Court's *Opinion and Order* and Judgment (Docket Nos. 59, 60).

On July 8, 2025, despite the pending appeal, and without affording Defendants an opportunity to respond, the Court granted Plaintiffs' motion to enforce judgment and required Defendants to file proof of compliance by July 31, 2025. (Docket No. 66).

As a result, Defendants now respectfully request a stay of the Court's May 30, 2025, *Opinion and Order* and June 2, 2025, *Judgment* pending resolution of the appeal before the First Circuit. In essence, Defendants stress that the Court's ruling implicates serious legal questions concerning rational basis review, judicial deference to the political branches, and the limits of judicial authority to compel executive action absent legislative mandate. Thus, since Defendants are appealing the Court's Order granting Plaintiffs' *Motion for Summary Judgment* and denying Defendants' *Cross Motion for Summary Judgment*, the enforcement of the *Opinion and Order* and corresponding *Judgment* must be stayed pending resolution of the appeal.

## II.    STANDARD OF REVIEW

Under Fed. R. App. P. 8(a) and applicable First Circuit precedent, courts consider four factors applicable to preliminary injunctions when determining whether to grant a stay pending appeal: (1) whether the applicant has made a strong showing of success on the merits; (2) whether the applicant will be irreparably harmed absent injunctive relief; (3) whether issuance of the stay will injure other parties; and (4) where the public interest lies. Nken v. Holder, 556 U.S. 418, 434 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776-77 (1987)); Acevedo-García v. Vera-

2

Monroig, 296 F.3d 13, 16 n. 3 (1st Cir. 2002); Joubert-Vázquez v. Alvarez-Rubio, 841 F.Supp.2d 570, 573 (D.P.R. 2012).

The first two factors, the Supreme Court made clear, "are the most critical." Nken, 556 U.S. at 434. Because both of these factors "require a showing of more than mere possibility," the movants "must show a strong likelihood of success, and they must demonstrate that irreparable injury will be likely absent . . . [a stay]." Respect Maine PAC v. McKee, 622 F.3d 13, 15 (1st Cir. 2010). "The sine qua non [of the stay pending appeal standard] is whether the [movants] are likely to succeed on the merits." Acevedo-García v. Vera-Monroig, 296 F.3d at16 (per curiam) (*quoting* Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir.1993)); Rivera-Torres v. Ortíz Vélez, 341 F.3d 86, 95 (1st Cir. 2003). Accordingly, "[w]hat matters . . . is not the raw amount of irreparable harm [a] party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits . . . ." In re Elias, 182 F.App'x 3, 4 (1st Cir. 2006) (citation and internal quotation marks omitted); United Steelworkers of America v. Textron, Inc., 836 F.2d 6, 7 (1st Cir.1987).

### III.    DISCUSSION

On May 30, 2025, this Court entered an *Opinion and Order* (Docket No. 59), granting, in our view incorrectly, Plaintiffs' *Motion for Summary Judgment* and denying Defendants' *Cross Motion for Summary Judgment*. The Court's order required Defendants to "promptly amend their Application for Gender Change form to include an option to select an "X" as one's gender marker on their birth certificate." (Docket No. 59 at 19). The Court found that the "Puerto Rico's current Birth Certificate Policy is not supported by a rational basis and therefore violates the Equal Protection Clause of the Fourteenth Amendment." Id. This, notwithstanding that Petitioner failed to meet their burden of negating every conceivable basis supporting the policy under a rational

3

basis review and the Government's policy being rationally related to multiple legitimate state interests as further detailed in Defendants' *Cross Motion for Summary Judgment* (Docket No. 52) and *Motion for Reconsideration Pursuant to Rule 59(E) of the Federal Rules of Civil Procedure* (Docket No. 61).

Based on this, Defendants respectfully proffer the present case should be stayed to allow the First Circuit to address complex and novel constitutional issues surrounding Equal Protection, the proper scope of rational basis review, and the deference owed to legislative and administrative discretion in matters of public policy and vital statistics.

**A. The Court's Reasoning Relied on Now Vacated Precedent.**

As a threshold matter, it bears mentioning that in its *Opinion and Order,* the Court relied heavily on the Tenth Circuit's decision in Fowler v. Stitt, 104 F. 4th 770 (10th Cir. 2024), concluding that the Government's binary-only birth certificates failed rational basis review and therefore violate the Equal Protection Clause under the Fourteenth Amendment. Specifically, the Court stated that while the Government may have a legitimate interest in maintaining accurate birth records, it failed to sufficiently articulate that interest. (Docket No. 59 at p. 11, 14, 17-19). At the time the *Opinion and Order* was issued, a petition for certiorari in Stitt v. Fowler, Docket No. 24-801, __ S. Ct.___ (2025),[1] was pending before the Supreme Court of the United States.

However, on June 30, 2025, the Supreme Court granted certiorari in Stitt v. Fowler, vacated the Tenth Circuit's decision in Fowler v. Stitt, supra, and remanded the case to that Circuit for further consideration in light of its decision in United States v. Skrmetti, 605 U.S. ___ (2025).[2]

---

[1] The issue presented: Whether the equal protection clause of the Fourteenth Amendment requires a state to alter its official certificate documenting a person's sex at birth to represent that person's current gender identity.

[2] Holding: Tennessee's law prohibiting certain medical treatments for transgender minors is not subject to heightened scrutiny under the equal protection clause of the Fourteenth Amendment and satisfies rational basis review.

See Stitt v. Fowler, Docket No. 24-801, ___ S. Ct.___ (2025); 2025 WL 1787695. In Defendants' view, the sole fact that the Court's *Opinion and Order* is undergirded by precedent that has since been directly overturned by the Supreme Court supports staying the case to allow further exploration by the First Circuit of this issue.

**B. Defendants have a strong likelihood of success on the merits.**

That said, here, Defendant's on appeal challenge the Court's conclusion that Puerto Rico's binary birth certificate format is not supported by a rational basis. In short, Defendants contend that the Court's ruling departs from well-established Equal Protection precedent by misapplying rational basis review. As the Supreme Court has repeatedly emphasized, rational basis review is highly deferential to legislative judgments. See FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993) ("Where there are plausible reasons for [government] action, our inquiry is at an end."). Under this standard, legislation is presumed valid and upheld if any reasonably conceivable state of facts could justify the classification.

In this case, no state classification exists because the challenged policy treats all individuals equally by issuing birth certificates with either "Male" or "Female" markers, consistent with longstanding legal definitions in Puerto Rico's Civil Code and vital records statutes. Nevertheless, even assuming *arguendo* that a classification exists, Plaintiffs failed to meet their burden of negating every conceivable basis supporting the policy. Still, the Court erroneously shifted the burden onto Defendants to justify the policy's legitimacy, contrary to governing precedent. See Heller v. Doe, 509 U.S. 312, 320 (1993).

Contrary to the Court's ruling, the Government's policy on the birth certificate format is rationally related to multiple legitimate state interests, including preservation of historical records, administrative consistency, fraud prevention, and the transferability of public documents across

jurisdictions. See Gore v. Lee, 107 F.4th 548, 561 (6th Cir. 2024) ("deferential standard does not require States to show that a classification is the only way, the best way, or even the most defensible way to achieve their interests;" instead "[i]t requires only that 'some plausible reason' supports the classification, no matter how imprudent or ineffective."). This is so because "[t]he promise of equal protection is limited to 'keep[ing] governmental decisionmakers from treating differently persons who are in all relevant respects alike.'" Kasper v. School Board of St. Johns County, 57 F.4th 791, 803 n.6 (11th Cir. 2023) (school policy requiring restroom access based on biological sex—not gender identity—did not violate the Equal Protection Clause or Title IX).

Further, Puerto Rico's birth certificate format reflects a deference to the legislative process. Viewed through that prism, Courts, especially when applying rational basis review, may not substitute their policy preferences for those of duly elected officials. See U.S. v. Skrmetti, 605 U.S. ___; 145 S.Ct. 1816, 1837 (2025) (holding that Equal Protection Clause does not resolve social policy disagreements over medical treatment; courts are not to judge a law's wisdom or fairness but only its constitutionality, leaving policy choices "to the people, their elected representatives, and the democratic process"). Similarly, in Dobbs v. Jackson Women's Health Org., the Supreme Court stressed the importance of returning policy matters to the people and their elected representatives. 597 U.S. 215 (2022) (the Constitution does not confer a right to abortion, overruling Roe v. Wade, 410 U.S. 113 (1973) and returning full regulatory authority over abortion to the states). Under the aegis of Dobbs, the Supreme Court emphasized: (i) a deep respect for state sovereignty; (ii) the need for courts to avoid fashioning rights not clearly grounded in the Constitution; and (iii) that states have a legitimate authority to regulate social and moral issues.

In addition, because, as outlined above, the very precedent the Court adopted no longer holds precedential value, as its been directly rejected by the Supreme Court. As such, the legal

landscape has materially shifted in Defendants' favor, who now have a substantially increased likelihood of success on the merits..

### C. Defendants Will Suffer Irreparable Harm Absent a Stay.

Requiring the Department of Health to implement the Court's mandate before the appeal is resolved imposes irreversible harms. Particularly, absent a stay, the Department of Health will be compelled to alter the content and structure of a vital government document—the birth certificate —without legislative authority. This, on its own, raises profound separation of powers concerns. More still, the Department would be forced to implement a complex administrative change—including modifying forms, procedures, and recordkeeping protocols —with significant fiscal and logistical implications. Once altered, these changes would be difficult, if not impossible, to unwind should Defendants ultimately prevail on appeal.

Further, such court-mandated modifications interfere with Puerto Rico's sovereign authority over its own administrative processes. Specifically, the *Opinion and Order* interferes with the public administration and requires expenditure of public funds. See Dugan v. Rank, 372 U.S. 609, 620 (1963) ("[t]he general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' […] or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'") (citing Land v. Dollar, 330 U.S. 731, 738 (1947) and Larson v. Domestic & Foreign Corp., 337 U.S. 682, 704 (1949)).

Because the potential for irreparable injury to Defendants absent a stay is substantial, they need only make a minimal showing of likelihood of success on appeal. See Doe v. Gonzáles, 546 U.S. 1301, 1306-07 (2005) ("Although there is a question as to the likelihood of [the Government's] success on the merits and some injury to [the applicants] if a stay is granted, the

7

[Government has] demonstrated that [it] will suffer irreparable harm and the public interest [will be] significantly injured if a stay is not granted. The balance of harms tilts in favor of [the Government].") (citing Mohammed v. Reno, 309 F.3d 95 (2d Cir. 2002).

Sovereign or governmental harm cannot be fully remedied post hoc. The Supreme Court has noted that a state's, "inability to enforce [ ] duly enacted plans clearly inflicts irreparable harm." California v. Trump, No. 25-CV-10810-DJC, 2025 WL 1667949, at *17 (D. Mass. June 13, 2025) (citing Abbott v. Perez, 585 U.S. 579, 603 n.17 (2018); see also Maryland v. King, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("a state 'suffers a form of irreparable injury' if enjoined 'from effectuating statutes **enacted** by representatives of its people[.]'") (internal quotations omitted); Louisiana v. Biden, 55 F.4th 1017, 1033-35 (5th Cir. 2022) (affirming a district court's finding of irreparable harm based upon plaintiff states' diversion of resources to comply with an invalid regulation); Kansas v. United States, 249 F.3d 1213, 1227 (10th Cir. 2001) (noting that harms to a state's "sovereign interests and public policies" are irreparable). "[C]omplying with [an order] later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin., 16 F.4th 1130, 1142 (5th Cir. 2021). It follows then that requiring governmental entities to implement policies later reversed imposed irreparable harm. This, because they cannot recoup the expenses or administrative burdens through future damages for monetary relief is unavailable, as such the damage to sovereignty and institutional integrity is done and would not be redressed even in the likely event that Defendants are successful on appeal.

Mandating compliance with the *Opinion and Order* hinged on a vacated case inflicts irreparable harm by disrupting sovereign policy decisions and potentially requiring costly, complex administrative changes that may be reversed on appeal. It orders the Government of

8

Puerto Rico, through its Department of Health, to alter its administrative rules for issuing vital documents that could be seen as interfering with public administration and thus infringing on Puerto Rico's sovereign authority under Dugan. To wit, the Court's mandate on Puerto Rico's administrative operations impermissibly infringes upon its sovereign authority in so far as it forces the Government of Puerto Rico to implement an overhaul of its administrative process (e.g., in vital statistics, health, education, etc.) while the appeal is pending and thus, if not stayed, would cause irreparable harm to its constitutional authority to self-govern, running in conflict with Dobbs. Such harm cannot be undone if the appellate process later reverses this Court's *Opinion and Order*.

**D. No Substantial Injury Will Befall Plaintiffs If a Stay Is Granted**

While Plaintiffs have secured favorable judgment, a brief stay pending appeal merely preserves the status quo. Plaintiffs face no imminent harm from the continued application of the current birth certificate format for the duration of appellate review. Any relief they seek can be fully vindicated should the Court of Appeals affirm. By contrast, denial of a stay and requiring immediate compliance with judgment that may later be reversed could cause profound, lasting harm to the Commonwealth's institutional framework and administrative processes.

Additionally, the challenged birth certificate format does not implicate fundamental constitutional rights because there is no constitutionally enshrined right to include a third gender category (particularly one that is unrecognized by a majority of states and countries' official documents) on the Government of Puerto Rico's birth certificates.[3] Along that line, Dobbs shifted the focus from individual interests back to state-level democratic processes. Id., at 300. Moreover, Dobbs suggests courts must respect the balance of interests, including the right of the people—

---

[3] To that point, the Court's *Opinion and Order* evaluated Puerto Rico's birth certificate format under a rational review scrutiny precisely because Plaintiffs failed to show that they in fact where either (i) impermissibly classified as members of a suspect or quasi-suspect class, or (ii) that a fundamental constitutional right of theirs had been infringed.

9

through their government—to regulate sensitive matters. Id. However, if the stay is denied, it unjustly prioritizes individual claims over sovereign authority.  Meanwhile, Plaintiffs will suffer no cognizable harm from maintaining the current policy during the pendency of the appeal—especially since the case relied on by the Court—Fowler v. Stitt—was vacated and remanded for further consideration.

### E. The Public Interest Favors a Stay

Finally, there are compelling public-interest considerations. Indeed, the Court itself recognized that "[i]t is not disputed that Puerto Rico has a legitimate interest in recording facts about its citizens at birth and maintaining accurate vital records." (Docket No. 59 at 18).  Plaintiffs failed altogether to meet their burden of negating every conceivable basis supporting the policy. Not granting the requested stay of proceedings pending appeal would lead to the unwarranted consequence of causing the irreparable injury discussed in subsection C of this motion.

A stay protects the integrity of the democratic process and preserves public trust in the orderly administration of government, especially in the sensitive context of vital records. Courts should be cautious when mandating governmental action that would override or displace legislative prerogatives. As the Supreme Court has underscored, matters that involve evolving social and policy questions are best resolved through representative bodies, not through judicial fiat. See Dobbs, 597 U.S. at 274, 300 (citing Ferguson v. Skrupa, 372 U.S. 726, 730 (1963); see also Dandridge v. Williams, 397 U.S. 471, 484-486 (1970). That is, the public interest favors a stay to allow Puerto Rico's political branches—not the courts—to resolve contested policy questions.  Imposing premature judicial mandate undercuts democratic legitimacy and harms public trust.

Moreover, the Defendants have many compelling interests implicated in this case be it

maintaining consistent and historically accurate vital records based on objective and administratively verifiable criteria; the accuracy of the Government of Puerto Rico's speech through its birth certificate records; prevention of fraud and administrative uniformity; and the transferability and marketability of Puerto Rico's public records with those of other jurisdictions that do not recognize nonbinary gender designations. These interests directly serve the public good and thus to avoid administrative confusion and preserve governmental resources the instant case should, at a minimum, be stayed to allow the appellate process to resolve these ever-shifting constitutional questions. Further, the Supreme Court's recent pronouncements in <u>Fowler</u>, <u>Skrmetti</u>, and even to some extent <u>Dobbs</u> show that equal protection standards in gender-identity cases are in active flux (and perhaps betray that the winds of change, in the judicial realm at least, do not flow to Plaintiffs' benefit). Viewed through this lens, public institutions should not be required to make permanent changes while the law remains unsettled. Thus, the public interest weighs in favor of granting Defendants request to stay proceedings pending appeal.

## IV. CONCLUSION

In light of the above stated, Defendants respectfully request that this Honorable Court stay the *Opinion and Order* entered on May 30, 2025, and the corresponding *Judgment* of June 2, 2025, pending resolution of their appeal before the First Circuit.

As a summary, it is unquestionable that a stay pending appeal should be granted for several compelling reasons. **First**, Defendants have demonstrated a strong likelihood of success on the merits on appeal. Particularly, the present case involves legitimate and important governmental interests concerning vital records that meets the rational basis review under the Equal Protection Clause and Courts must consider the deference owed to legislative judgments and the permissible scope of judicial intervention in the domain of state vital records. **Second**, there is a potential for

irreparable institutional harm to the Puerto Rico's vital record systems by compelling Defendants to amend Puerto Rico's birth certificate forms based on an order that may later be reversed on appeal. **Third**, the stay poses no substantial harm on Plaintiffs since it merely preserves the status quo and does not implicate fundamental constitutional rights. **Fourth**, the stay serves a bevy of compelling public interests, some of which were recognized by the Court itself in its *Opinion and Order* (Docket No. 59). Therefore, given the significance of the issues at stake and the balance of harms, it is essential for the Court to grant the motion for a stay pending appeal.

Lastly, the recent Supreme Court decision in Stitt v. Fowler, vacating the Tenth Circuit's decision in Fowler v. Stitt, and Dobbs strengthened Defendants' argument that a stay pending appeal is warranted. This is particularly true when the underlying appeal concerns state or territorial sovereignty, especially where a court has mandated changes to local governance or administrative authority. Respectfully, Defendants contend that, contrary to this Court's holding, the Supreme Court calls for deference to local institutions and weighs against expansive judicial remedies.

**WHEREFORE**, appearing co-defendants respectfully request that the Court take notice of the above and **GRANT** the present motion, staying the enforcement of the *Opinion and Order* (Docket No. 59) and corresponding *Judgment* (Docket No. 60) in the captioned case until after the US Court of Appeals for the First Circuit resolves the pending appeal (Docket No. 64).

**I HEREBY CERTIFY** that the undersigned attorney electronically filed the foregoing with the Clerk of the Court via CM/ECF System, which will send notification of such filing to all attorneys of record.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 18th day of July 2025.

| | |
|---|---|
| **LOURDES L. GÓMEZ TORRES**<br>Secretary of Justice<br><br>**ANTONIO M. CINTRÓN ALMODÓVAR**<br>Deputy Secretary of Civil Litigation<br><br>**SUSANA I. PEÑAGARÍCANO BROWN**<br>Director of Federal Litigation and<br>Bankruptcy Division | *S/ Diana I. Pérez-Carlo*<br>**DIANA I. PÉREZ-CARLO**<br>USDC No. 307313<br>Email: *diana.perez@justicia.pr.gov*<br>Tel. (787) 721-2900, ext. 1419<br><br>**DEPARTMENT OF JUSTICE**<br>**OF PUERTO RICO**<br>Federal Litigation and Bankruptcy Division<br>PO Box 9020192<br>San Juan Puerto Rico, 00902-0192 |