# United States Court of Appeals
## For the First Circuit

No. 25-1638

ÍNARU NADIA DE LA FUENTE DÍAZ; MARU ROSA HERNÁNDEZ; ANDRÉ RODIL; YEIVY VÉLEZ BARTOLOMEI; GÉ CASTRO CRUZ; DENI JUSTE,

Plaintiffs, Appellees,

v.

JENNIFFER A. GONZÁLEZ COLÓN, in the official capacity as Governor of the Commonwealth of Puerto Rico; DR. VÍCTOR RAMOS OTERO, in the official capacity as Secretary of the Department of Health of the Commonwealth; WANDA LLOVET DÍAZ, in the official capacity as the Director of the Division of Demographic Registry and Vital Statistics of the Commonwealth,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. María Antongiorgi-Jordán, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Montecalvo, Circuit Judges.

Omar Andino-Figueroa, Solicitor General of Puerto Rico, with whom Frank A. Rosado Méndez, Deputy Solicitor General, were on brief, for appellants.

Raúl R. Labrador, Attorney General of Idaho, Alan M. Hurst, Solicitor General of Idaho, Michael A. Zarian, Deputy Solicitor General of Idaho, and Gader Wren, Assistant Solicitor General of Idaho, on brief for nineteen states and the Arizona Legislature as amici curiae supporting appellants.

Mariola Abreu-Acevedo and MZLS LLC on brief for the Senate of

Puerto Rico as amicus curiae supporting appellants.

Omar Gonzalez-Pagan, with whom Whit Washington, Lambda Legal Defense and Education Fund, Inc., and Johanna M. Emmanuelli Huertas were on brief, for appellees.

Kara N. Ingelhart and Northwestern Pritzker School of Law on brief for Waves Ahead Corp., La Federación LGBTQ+ de Puerto Rico, and True Self Foundation as amici curiae supporting appellees.

Fermín L. Arraiza-Navas, Annette Martínez-Orabona, American Civil Liberties Union Puerto Rico Chapter, Barbara Schwabauer, Jon Davidson, Chase Strangio, and American Civil Liberties Union Foundation on brief for American Civil Liberties Union and American Civil Liberties Union of Puerto Rico as amici curiae supporting appellees.

Seran Gee and Advocates for Trans Equality Education Fund on brief for Advocates for Trans Equality Education Fund, Family Diversity Projects, Maine Transgender Network Inc., Massachusetts Transgender Political Coalition, and 603 Equality as amici curiae supporting appellees.

Jessica Méndez-Colberg and Consultoras de Estrategias Legales y Financieras Integrales LLC on brief for Amnesty International Puerto Rico Section, Inc. as amicus curiae supporting appellees.

---

September 1, 2026

---

**MONTECALVO**, **Circuit Judge**.[1] Ínaru Nadia de la Fuente Díaz and five other nonbinary persons (collectively, "Plaintiffs") sued Puerto Rico officials (collectively, "Puerto Rico")[2] in the U.S. District Court for the District of Puerto Rico, alleging that Puerto Rico's birth certificate format infringed upon their rights under the Equal Protection and Due Process Clauses of the U.S. Constitution's Fourteenth Amendment and the First Amendment of the U.S. Constitution and Puerto Rico Constitution. The parties filed cross-motions for summary judgment. The district court granted Plaintiffs' motion for summary judgment, concluding that Puerto Rico's birth certificate format violated Plaintiffs' rights under the Equal Protection Clause, and denied Puerto Rico's motion for summary judgment. For the reasons stated below, we vacate the district court's order and remand for further proceedings.

---

[1] We thank all amici to this appeal -- nineteen states and the Arizona Legislature, the Senate of Puerto Rico, Waves Ahead Corp., La Federación LGBTQ+ de Puerto Rico, True Self Foundation, American Civil Liberties Union, American Civil Liberties Union of Puerto Rico, Advocates for Trans Equality Education Fund, Family Diversity Projects, Maine Transgender Network Inc., Massachusetts Transgender Political Coalition, 603 Equality, and Amnesty International Puerto Rico Section, Inc. -- for their briefs.

[2] The Complaint named the Governor of Puerto Rico, the Secretary of the Department of Health of Puerto Rico, and the Director of the Division of Demographic Registry and Vital Statistics of Puerto Rico (the "Demographic Registry") in their official capacities as Defendants. For simplicity, we will refer to Defendants-Appellants collectively as "Puerto Rico."

**I.**

**A.**

On July 5, 2023, Plaintiffs, who are nonbinary persons born in Puerto Rico, wrote to the Executive Director of the Demographic Registry to request an amendment to the Application for Gender Change in Vital Event Certification ("Application for Gender Change"). The Application for Gender Change permits an applicant to request a new birth certificate in order to reflect a change in gender. As written, it provides two "gender selection" options, "[f]emale" or "[m]ale." Plaintiffs requested that the Application for Gender Change be amended to include an option "X."

Plaintiffs' request followed, and built upon, an earlier lawsuit that resulted in a new Demographic Registry protocol for requesting a gender change on a person's birth certificate. In 2018, the U.S. District Court for the District of Puerto Rico, in Arroyo González v. Rossello Nevares, ordered the Demographic Registry to permit transgender binary individuals to amend the gender on their birth certificate "by issuing a new birth certificate with the applicant's true gender, without using a strike-out line or otherwise including any information that would disclose a person's transgender status." 305 F. Supp. 3d 327, 333-34 (D.P.R. 2018) (emphasis omitted). At the time of Arroyo González, the Demographic Registry permitted transgender individuals to change their name on their birth certificate while

prohibiting them from changing their gender on their birth certificate. Id. at 328, 333. The district court explained that this policy forced plaintiffs "to disclose their transgender status" in violation of their right to privacy. Id. at 333. The district court determined that the forced disclosure of plaintiffs' transgender status violated their constitutional right to decisional and informational privacy. Id. As a result, Puerto Rico issued a new application form, which is the Application for Gender Change we discuss here.

Turning back to the present case, on September 8, 2023, the Director of the Demographic Registry denied Plaintiffs' request to amend the Application for Gender Change to include an "X" option. Shortly afterwards, on October 27, 2023, Plaintiffs filed an initial complaint in this case alleging that Puerto Rico's birth certificate format infringed upon their rights under the Fourteenth Amendment of the U.S. Constitution's Equal Protection and Due Process Clauses and the First Amendment of the U.S. Constitution and Puerto Rico Constitution.[3]

Plaintiffs' Complaint alleges that "Puerto Rico's Birth Certificate Policy facially and intentionally discriminates

---

[3] Plaintiffs filed an amended complaint on October 30, 2023, and Plaintiffs filed a second amended complaint on November 15, 2023. Like the district court, we refer to the second amended complaint as the "Complaint."

against . . . Plaintiffs" "based on sex-related considerations."[4] The Complaint further alleges that Puerto Rico birth certificates classify based on a person's sex, but that for transgender nonbinary persons, including Plaintiffs, "this classification reflects a sex contrary to their true sex, as determined by their gender identity, causing harm as a result." Plaintiffs seek declaratory and injunctive relief under 42 U.S.C. § 1983, and request that the court order Puerto Rico "to permit transgender nonbinary persons born in Puerto Rico to correct their birth certificates to accurately reflect their true sex, consistent with their gender identity," by including an "X" marker. Plaintiffs also request that the court issue a writ of mandamus and that the court order Defendants to issue Plaintiffs corrected birth certificates. Like the district court, we only reach Plaintiffs' Equal Protection claim, so we focus our discussion on that claim.

In early 2024, Puerto Rico moved to dismiss the Complaint, and Plaintiffs opposed its motion.[5] While the motion to dismiss was pending, Plaintiffs moved for summary judgment, which Puerto Rico opposed, and Puerto Rico cross-moved for summary

[4] Plaintiffs use the term "Birth Certificate Policy" in their Complaint, and we do the same. Plaintiffs use the term "Birth Certificate Policy" to describe Puerto Rico's policy of not permitting transgender individuals to change the gender on their birth certificates to "X."

[5] Plaintiffs also filed a separate motion for a preliminary injunction, which Puerto Rico opposed, and the district court denied. Plaintiffs did not appeal that denial.

judgment. On September 23, 2024, the district court denied Puerto Rico's motion to dismiss, and on May 30, 2025, it granted Plaintiffs' motion for summary judgment and denied Puerto Rico's cross-motion. We turn now to the district court's summary judgment order, as it is the subject of this appeal.

**B.**

In its summary judgment order, the district court held that Plaintiffs were entitled to relief under the Equal Protection Clause of the Fourteenth Amendment.[6] Explaining that the Application for Gender Change gives "an option for binary applicants to choose a gender marker which aligns with their true gender, but does not provide [such] an option" for "nonbinary individuals," the district court concluded that Puerto Rico's "Birth Certificate Policy" creates a classification on its face between "people with a binary gender identity" and "nonbinary people." The district court also concluded that it did not need to decide which level of scrutiny applied to Puerto Rico's Birth Certificate Policy because it held that the Policy did not survive the lowest level of scrutiny -- rational scrutiny.

In applying rational basis review, the district court stated that Puerto Rico, in its view, had proffered only two

---

[6] Recall that the district court only reached Plaintiffs' claim under the Equal Protection Clause; it did not reach Plaintiffs' claims under the Due Process Clause or the First Amendment of the U.S. Constitution and Puerto Rico Constitution.

interests supporting its Policy. The district court concluded that these reasons did not survive rational basis review. According to the district court, Puerto Rico first argued that "creating a new gender category, such as 'X,' without legislative approval undermines the separation of powers." The district court disagreed, reasoning that courts are responsible for determining whether laws and policies are unconstitutional (and striking them down if they are), and that Puerto Rico failed to explain why this policy would be "uniquely immune to judicial review." Puerto Rico challenges the district court's conclusion, as does amicus curiae the Senate of Puerto Rico. Second, Puerto Rico argued that the government "has an interest in maintaining the integrity of public records." The district court reasoned that although this is a legitimate interest, Puerto Rico already has a policy to retain an individual's original birth certificate when it has been amended, and Puerto Rico failed to explain why this legitimate interest "is furthered by treating nonbinary individuals differently than binary individuals." After considering these two arguments, the district court made the inference that because it could not "conceive of any rational basis for the Policy's . . . distinction between binary and nonbinary individuals," the classification was "born of animosity" toward nonbinary persons.[7] (Quoting in the

[7] Puerto Rico has also argued to us, among other things, that it has "a legitimate interest in maintaining a consistent and

second instance Romer v. Evans, 517 U.S. 620, 634 (1996)). Based on these predicates, it held that the Birth Certificate Policy failed rational basis review and violated the Equal Protection Clause of the Fourteenth Amendment. The district court granted summary judgment for Plaintiffs, denied summary judgment for Puerto Rico, and ordered Puerto Rico to "promptly amend [its] Application for Gender Change form to include an option to select an 'X' as one's gender marker on their birth certificate." The district court then denied Puerto Rico's motion for reconsideration. On July 1, 2025, Puerto Rico timely appealed. Puerto Rico then requested a stay pending appeal, which the court denied. On July 30, 2025, this court granted Puerto Rico's request for a stay pending appeal.

**II.**

We move now to our analysis of the district court's summary judgment order, which we review de novo, "constru[ing] the

---

historical definition of sex on its birth certificates" and the inclusion of Plaintiffs' requested sex marker "would transform Puerto Rico's birth certificates from objective records of biological sex into subjective declarations of personal identity." Puerto Rico then contends that this would lead to further claims from other groups about the Policy. Relatedly, the district court's opinion, Puerto Rico argues, "would give rise to significant concerns regarding the workability and administrative ability of the Demographic Registry . . . -- often at substantial cost and in an impracticable manner -- to modify its internal administrative procedures."

evidence in the light most congenial to the nonmovant."[8] Wadsworth v. Nguyen, 129 F.4th 38, 50 (1st Cir. 2025) (citation modified). We dive into the issues midstream, because, like the district court, we assume without deciding that the Birth Certificate Policy is subject to rational basis review. With that framework in mind, we now consider whether the Birth Certificate Policy withstands rational basis review.

**A.**

Under the rational basis standard, government conduct "is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985). The Supreme Court has recently, in United States v. Skrmetti, 605 U.S. 495 (2025), established the binding standards for rational basis review in an equal protection challenge:

> We have reconciled the principle of equal protection with the reality of legislative classification by holding that, "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." We generally afford such laws "wide latitude" under this rational basis review,

[8] "Cross[-]motions [for summary judgment] simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Anvar v. Dwyer, 82 F.4th 1, 7 (1st Cir. 2023) (quoting Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004)).

> acknowledging that "the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes."

Id. at 509-10 (first quoting Romer, 517 U.S. at 631; then quoting Cleburne, 473 U.S. at 440). It went on to hold:

> The rational basis inquiry "employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one." Under this standard, we will uphold a statutory classification so long as there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." Where there exist "plausible reasons" for the relevant government action, "our inquiry is at an end."

Id. at 522 (first quoting Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 314 (1976) (per curiam); then quoting FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313-14 (1993)). And it explained that:

> "[T]he fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." R.R. Ret. Bd. v. Fritz, 449 U.S. 166, 179 (1980); see Dandridge v. Williams, 397 U.S. 471, 485 (1970) ("In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect."); Lindsley v. Nat. Carbonic Gas Co., 220 U.S. 61, 78 (1911) ("A classification having some reasonable basis does not offend against [the Equal Protection Clause] merely because it is not made with mathematical nicety or because in practice it results in some inequality.").

Id. at 524 (alterations in original).

As we have explained, "[t]he question is not what went on in the mind of the [government] actor but whether anyone, including the judge, can conceive of a rational reason for such a classification." McKenna v. Me. Dep't of Health & Hum. Servs., 152 F.4th 14, 22 (1st Cir. 2025) (first alteration in original) (quoting Jeneski v. City of Worcester, 476 F.3d 14, 17 (1st Cir. 2007)).

**B.**

Under this "forgiving" standard, we conclude that Puerto Rico's Birth Certificate Policy is supported by a rational basis. See A.C. by Waithe v. McKee, 23 F.4th 37, 46 (1st Cir. 2022) (quoting Donahue v. City of Boston, 371 F.3d 7, 15-16 (1st Cir. 2004)). Because our rational basis review is not limited to the arguments Puerto Rico raised, Plaintiffs have failed to carry their burden to demonstrate that there is not any "fairly conceivable set of facts that could ground a rational relationship between the challenged classification and the government's legitimate goals." Doherty v. Merck & Co., 892 F.3d 493, 500 (1st Cir. 2018) (quoting Eulitt ex rel. Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 356 (1st Cir. 2004)). We need not reach all of Puerto Rico's arguments that the policy is supported by many rationales because we conclude

that it is supported by a different rationale and, therefore, the district court erred as a matter of law.

Starting with the challenged classification, we assume that the Birth Certificate Policy classifies on its face between transgender people with a binary gender identity and transgender people with a nonbinary gender identity. With this classification in mind, we conclude that the Birth Certificate Policy is supported by a rational basis, contrary to the district court's holding. Indeed, Plaintiffs' framing of their argument demonstrates why this is so. Plaintiffs' argument is founded on current Puerto Rico law, which permits transgender binary people to update the gender on their birth certificates. See P.R. Laws Ann., tit. 31, § 7655. But Puerto Rico law allows this update because it responded to the Arroyo González holding that the policy in effect at the time violated transgender binary individuals' privacy rights. 305 F. Supp. 3d. at 333-34. Unlike the transgender binary plaintiffs in Arroyo González, Plaintiffs here have not demonstrated that the Birth Certificate Policy violates transgender nonbinary Plaintiffs' privacy rights. Rather, Plaintiffs waived any argument on this front. See Cornwell Ent., Inc. v. Anchin, Block & Ankin, LLP, 830 F.3d 18, 32 (1st Cir. 2016). Indeed, at oral argument, Plaintiffs conceded that the Birth Certificate Policy does not violate the informational privacy right that Arroyo González contemplated, recognizing that

a nonbinary gender marker inherently discloses a person's nonbinary status. Plaintiffs also fail to develop a separate argument that Puerto Rico's interest in protecting privacy rights is not furthered by the Birth Certificate Policy and its challenged classification between transgender binary people and transgender nonbinary people. Puerto Rico has a legitimate interest in protecting the privacy rights of people born in Puerto Rico, and as Plaintiffs have neither argued nor demonstrated that the Birth Certificate Policy infringes on their privacy rights or that privacy rights are not furthered by the Policy, there is a rational relationship between the challenged classification and this legitimate interest. It is thus conceivably rational for Puerto Rico to not update transgender nonbinary people's birth certificates while updating transgender binary people's birth certificates.

**III.**

For the foregoing reasons, we **vacate** the district court's order and **remand** to the district court for further proceedings consistent with this opinion.